## E. J. CHAPIN v. ELIZABETH JENKINS et al.

1. REPLEVIN — *Demand — Practice.* Where the defendant in a replevin action asserts title to the property in himself in opposition to that claimed by the plaintiff, or where he alleges such title in his answer, no proof of demand and refusal is necessary.

2. CHATTEL MORTGAGE, *When a Fraud upon Creditors.* A mortgage of a stock of merchandise, not recorded, which by its terms permits the mortgagor to retain possession of and sell the stock without restriction, and which contains no requirement that the proceeds shall be used in the payment of the mortgage debt, or that any accounting shall be made for the proceeds, operates as a fraud upon the creditors of the mortgagor, and is void.

3. ASSIGNMENT — *Rights of Assignee.* Where an assignment is made by such mortgagor, the assignee is the representative of all the creditors, and for their benefit may contest the validity of such a mortgage, in an action brought thereon by the mortgagee to recover the possession of the mortgaged property.

*Error from Bourbon District Court.*

ELIZABETH JENKINS brought this action to recover the possession of a stock of merchandise, together with some fixtures and tools, against Wm. F. Dinklage, and A. D. Jones, the assignee of Dinklage. She claimed the right of possession under a chattel mortgage executed by Dinklage on March 2, 1889, but which was not recorded until August 5, 1889, the day on which Dinklage made an assignment. Jones was appointed by Dinklage as temporary assignee, and afterward the creditors met and elected E. J. Chapin as the permanent assignee, who thereafter filed an answer, alleging that the mortgage of Jenkins was void. On January 28, 1890, the cause was tried before the court without a jury, and, after the evidence was introduced, the court made the following findings of fact and conclusions of law:

"FINDINGS OF FACT.

"1. On March 2, 1889, defendant Dinklage, being in the confectionery and bakery and light grocery business, borrowed $400 of plaintiff, and gave his note, secured by chattel

mortgage on stock and fixtures mentioned in petition. The mortgage contained the usual stipulation for possession in mortgagor, and usual stipulation as to plaintiff's right to possession, and also a stipulation by which Dinklage was to sell in due course of trade, but to replace all goods sold, and the mortgage to cover all goods so replaced. A copy of the same is correctly set forth in the petition. This transaction was in good faith, but by oversight and carelessness the plaintiff failed to record said mortgage, said assignment being made in good faith and Dinklage being insolvent. Dinklage held possession, bought and sold, but paid nothing on plaintiff's debt.

"2. August 5, 1889, Dinklage made a general assignment to Jones of the property covered by the mortgage, for the benefit of his (Dinklage's) creditors. Jones, being a nominal partner of Jenkins, and having requested the loan to Dinklage, and having full knowledge concerning the same, went to plaintiff's house and procured the mortgage, and filed it for record about 30 minutes before filing the deed of assignment.

"3. On the next day plaintiff's husband and agent, who had acted for her in making the loan, came home and learned of the assignment. He saw Jones and complained about the transaction, and found fault with Jones for the part he had taken, and Jones replied that plaintiff would not lose anything, to which plaintiff's husband replied that he wanted the goods, and on the same day began this suit, the store being locked up and the key in Jones's possession.

"4. A large portion of the claims proved up under the assignment, and all the debts mentioned in the schedule of liabilities, 'Exhibit E,' except $110, were made between March 2 and August 5. At least a part of these creditors had no notice of the mortgage until after the assignment.

"5. The plaintiff, having replevied said property, proceeded to advertise and sell the same at public sale to J. C. Bennett for $475, said sale being advertised by notices posted up and by notice in the *Evening Tribune*, a fair number of persons and bidders attending the sale. The attorneys of the defendants warned all persons at the sale not to bid. The value of the property so sold was $1,500.

"6. Jones and Dinklage were made defendants in this suit, and E. J. Chapin was appointed assignee by the court to succeed Jones, and, on his own motion, was substituted defendant in Jones's place.

"7. The affidavit in replevin alleges ownership, and describes the property in bulk substantially as in the mortgage.

"8. The petition in replevin alleges special ownership under the chattel mortgage, and sets forth a true copy thereof. Defendant Dinklage files a general denial, and asks return of the value of the property. Defendant Chapin files a general denial, and alleges that the mortgage was informal and void, and not recorded as the law requires, and asks a return of the property or its value.

"9. No other or formal demand was made than as above set forth, and the plaintiff conceded on the trial that no demand was made.

"10. The advertisement and public sale were made and conducted in good faith.

"11. The scheduled debts of the assignor at the time of assignment were $1,637.56, and the assignor owed more debts than were embraced in the schedule."

"CONCLUSIONS OF LAW.

"1. The defendant Dinklage, having executed the note and mortgage in good faith, for value, cannot be heard to complain, and has no defense to this suit.

"2. Defendant Jones, being his assignee under the statute for the benefit of creditors, took no better title or greater rights than Dinklage had, and cannot question a former conveyance or transfer by his assignor.

"3. The defendant Chapin, being substituted for defendant Jones, occupies the same position that Jones would have occupied, and with the same rights and restrictions. Owing to the fact that defendant Chapin claims through said assignment, he cannot be permitted to show fraud in the mortgage or take advantage of the failure of the plaintiff to record the same forthwith.

"4. The mortgage being good as between plaintiff and defendant Dinklage, it is good between plaintiff and defendant's assignee.

"5. Plaintiff, by virtue of a chattel mortgage, and by virtue of the statute, had the legal title to this property at the commencement of this suit, and was therefore owner thereof, within the meaning of the statute concerning affidavits in replevin, and by the assignment and transfer of possession the conditions of the mortgage had been broken.

"6. At the commencement of this suit, if the defendant Jones held possession of the property recognizing plaintiff's

rights and willing to yield possession on demand, then plaintiff's duty was to make demand, but, under the pleadings in this case, defendant Jones, now Chapin, claiming title under the deed of assignment, and denying plaintiff's title or right to possession, the existence or proof of demand is rendered unnecessary.

"7. Plaintiff is entitled to recover in this action."

Judgment was given in accordance with the conclusions of law. The plaintiff in error, E. J. Chapin, excepted, and brings the case here for review.

*C. E. Cory*, and *E. W. Hulbert*, for plaintiff in error:

1. A demand is a prerequisite in replevin where the defendant originally acquired possession rightfully. *Arthur v. Wallace*, 8 Kas. 273; *Wilson v. Fuller*, 9 id. 176; *Brown v. Holmes*, 13 id. 482–491; *Stone v. Bird*, 16 id. 488–493; *Shoemaker v. Simpson*, 16 id. 43–53; *Dickson v. Randal*, 19 id. 212–215; *Hall v. Draper*, 20 id. 137–141; *Seip v. Tilghman*, 23 id. 289–291; *Raper v. Harrison*, 37 id. 243; *Schmidt v. Bender*, 39 id. 437–441; *Moser v. Jenkins*, 5 Ore. 447; *Surles v. Sweeney*, 11 id. 21; *Campbell v. Quackenbush*, 33 Mich. 288; *Hill v. Covell*, 1 N. Y. 522; *Kelsey v. Griswold*, 6 Barb. 436.

2. The Jenkins chattel mortgage was void because it was not recorded forthwith; it resulted in defrauding Dinklage's creditors, and it sought to hold after-acquired goods. *Twyne's Case*, 3 Coke, 80; *Frankhouser v. Ellett*, 22 Kas. 127–141; *Cameron v. Marvin*, 26 id. 612; *Leser v. Glaser*, 32 id. 546.

3. The holder of a mortgage which is in fraud of creditors cannot be allowed to enforce it against the statutory assignee of the mortgagor. *Sandwich Mfg. Co. v. Wright*, 22 Fed. Rep. 631; *Setter v. Alvey*, 15 Kas. 157; *Bernstein v. Smith*, 10 id. 60; *Gerlach v. Skinner*, 34 id. 86; *Flersheim v. Cary*, 39 id. 178; *Feineman v. Sachs*, 33 id. 621; *Stewart v. Platt*, 101 U. S. 731; *Rumsey v. Town*, 20 Fed. Rep. 555; *Clapp v. Nordmeyer*, 25 id. 71.

*A. A. Harris,* and *John H. Crain,* for defendant in error Jenkins:

As to the first proposition relied upon by counsel for plaintiff in error to sustain their contention in this case:

This proposition is always governed by the circumstances surrounding the case to be decided. Cobbey on Replevin, § 447, says: "The decisions upon the question when a demand is necessary are neither uniform nor entirely reconcilable; but I think the better doctrine is, that a demand is only required when it is necessary to terminate the defendant's right of possession or to confer that right upon the plaintiff." See, also, *Lamping v. Kemon,* 9 Colo. 390; *Eldred v. Oconto Co.,* 33 Wis. 140; *Homan v. Laboo,* 1 Neb. 204; *Myrick v. Bell,* 17 N. W. Rep. 268; *Smith & Co. v. McLean,* 24 Iowa, 322; *Dickson v. Randal,* 19 Kas. 212; *Raper v. Harrison,* 37 id. 243; *Redding v. Page,* 52 Iowa, 406; 5 Am. & Eng. Encyc. of Law, 528*i*, and note 3 thereto.

As to the second proposition relied upon by plaintiff in error, we submit that it cuts no figure in this case, for the following reasons:

1st. Because the mortgage, under our statutes, whether recorded or not, was good *inter partes,* and "the assignee takes only such rights in the property as the assignor had at the time of the assignment." 1 Am. & Eng. Encyc. of Law, 854; *Shaw v. Glenn,* 37 N. J. Eq. 32; *Henrichs v. Woods,* 7 Mo. App. 236; *Brown v. Brabb,* 11 Am. Rep. 549; *Platt v. Preston,* 3 Fed. Rep. 394.

2d. There is no question of defrauding creditors before this court; there is no evidence to that effect and no finding of fact warranting that conclusion. In fact, the assignee cannot be heard to complain of the acts and doings of the assignor before making the assignment. Under the statutes of certain states, notably New York, fraudulent transfers may be resisted, but even then the fraud must be fraud in fact. Rev. Stat. N. Y. (7th ed.) 2330.

3d. If the above reasoning is logical and good law, then

the third proposition of plaintiff in error necessarily falls to the ground. *Crawford's Adm'r v. Lehr*, 20 Kas. 509, 512.

The opinion of the court was delivered by

JOHNSTON, J.: The first point presented for decision is, that a demand was a prerequisite to the maintenance of the action, and that none was made. Proof of demand and refusal was not required. The findings show that the claim of title by the assignee was wholly inconsistent with the right of possession claimed by Jenkins. It appears that he knew all about the Jenkins mortgage, and that, after the assignment was made, an agent of hers complained of the action of the assignee, and then told him that Jenkins wanted the property. The assignee not only asserted a claim inconsistent with the right of possession of Jenkins, but in his answer he alleged title in himself, and that Jenkins had no valid claim against the property. Under these circumstances, the district court rightly held that proof of demand and refusal was unnecessary. (*Shoemaker v. Simpson*, 16 Kas. 43; *Dickson v. Randal*, 19 id. 212; *Raper v. Harrison*, 37 id. 243; *Bank v. Bank*, 46 id. 378; Cobbey, Repl., §§ 447–450; Wells, Repl., § 374.)

1. Replevin—demand—practice.

The invalidity of the chattel mortgage given by Dinklage to Jenkins is the next contention of the plaintiff in error. It was executed on March 2, 1889, upon property described as follows: "All his stock of confectionery, goods of all kinds, show cases, fixtures, tools, etc., situated at 207 Market street, in the city of Fort Scott, Kas." It was not placed upon record, however, for more than five months after its execution, nor until about 30 minutes before the assignment was made. It contained the following provision: "Mortgagor to have the right to sell goods in the regular course of business, but to replace goods sold with new stock, and this mortgage is intended to cover goods bought to replace those sold in course of business." There was no provision in the mortgage with reference to what should be done with the proceeds of the sales, and no requirement was made as to paying the

proceeds on the mortgage debt. The stock which he was carrying was valued at about $1,500, and it is shown from the record that he owed at least $1,637.56, all of which indebtedness had accrued subsequent to the date of the mortgage, except the sum of $110. It thus appears that most, if not all, of the stock had been replaced by new goods while the mortgage was outstanding and unrecorded. By withholding the mortgage from record, and failing to take possession of the goods, Jenkins permitted the creditors to deal with Dinklage upon the theory that his property was unincumbered and subject to the payment of their debts. Dinklage was permitted to buy and sell goods as he had previously done, without accounting for the proceeds, or applying them upon the mortgage debt, or any other of his debts. In this way, all the property of Dinklage was tied up and withheld from the creditors, without providing for an accounting of the sales or provision for the payment of any debt. It operated to hinder and delay the creditors in the collection of their debts; and we think, under the facts and circumstances of the case, it rendered the mortgage void as against the creditors of Dinklage. (*Leser v. Glaser*, 32 Kas. 546; *Rathbun v. Berry*, 49 id. 735, and cases cited.)

2. Chattel mortgage, when a fraud upon creditors.

The invalidity of the mortgage is not denied by defendant in error, but it is insisted that that fact is unimportant, for the reason that the assignee takes only such rights in the property as the assignor had at the time of the assignment, and that he cannot question the validity of the mortgage or complain of the acts and doings of the assignor before the assignment was made. May not the assignee defend against the foreclosure of a mortgage which is fraudulent and void? And can he not protect the property of the estate committed to his trust against all unjust and adverse claims? In a general sense it is true that the assignee derives his title from his assignor, and takes the property as it is found, subject to the equities and incumbrances existing against it. It is also true that the mortgage, although void as to creditors, could not be im-

peached by the mortgagor who made the assignment. If the assignee obtains all his right, title and authority from the assignor, and represents him alone, then he cannot question the validity of the mortgage. If he succeeds only to the rights of the assignor, and stands in his shoes, he cannot impeach or set aside a conveyance which the assignor could not. There is much diversity of opinion with reference to the position occupied by the assignee, and his right to question a fraudulent conveyance made by the assignor prior to the assignment. In general, it is held that the title obtained by him is derivative, and that, in the absence of statutory power, he will occupy no better position than his assignor, and cannot take or set aside a conveyance made by his debtor on the ground of fraud and invalidity. Under our statute, however, the assignee is not merely a representative of the assignor. The theory of the statute throughout is, that he takes and holds the property as a trustee, for the benefit of the creditors of the assignor. He represents all of the creditors, and the property assigned must be managed and disposed of as the law directs and for the benefit of all. The assignment in the first instance is voluntary, and the assignee appointed is selected by the assignor. After the assignment is made, however, the assignor loses all control of the estate, and no direction or limitation which he may attempt to give or impose will be effective. His selection of an assignee is only a temporary appointment, and the person appointed can exercise no other power than the safe-keeping and control of the property which may come into his hands. A permanent assignee is chosen at once by the creditors themselves. (Gen. Stat. of 1889, ¶¶ 384, 386.) The person so chosen administers the trust under the direction of the court and for the benefit of all the creditors. No reservation can be made by the assignor, no preferences are allowed, and any direction of the assignor with reference to the manner of distributing the assets of the estate is inoperative. (*Bank v. Sands*, 47 Kas. 595.) In *Brigham v. Jones*, 48 Kas. 165, it is said that—

"The distribution is controlled by the statute, and any pro-

vision in an assignment inconsistent with the statute must be treated as a nullity. The assignment, however, is not avoided by such a direction, but it inures to the benefit of all the creditors. When the debtors in this instance made an absolute conveyance or assignment of their property to Eastman, their control over the same was ended. Then the statute comes in, and provides, in the interest of equity and justice, that the assignee is the trustee for all the creditors, and requires him to make a *pro rata* distribution among them. (Gen. Stat. of 1889, ¶ 342.)"

As the representative and trustee of these creditors, it is his duty to protect the estate and defend the property assigned against adverse and unjust claims. If he was bound by the fraudulent mortgages made upon the property by his assignor, he would illy comply with the purpose of his trust, which is a just *pro rata* distribution of the estate of the debtor among all his creditors. We think that, under our statute, an assignee, as the representative of the creditors of the debtor, may defend in the interest of the creditors against a mortgage made in fraud of the creditors. (*Hanes v. Tiffany*, 25 Ohio St. 549; *Kilbourne v. Keller*, 29 id. 264; *Schaller v. Wright*, 70 Iowa, 667; *Pillsbury v. Kingon*, 33 N. J. Eq. 287; *Waters v. Dashiell*, 1 Md. 455; *Tams v. Bullitt*, 35 Pa. St. 308; *Freeland v. Freeland*, 102 Mass. 475; *Southard v. Benner*, 72 N. Y. 424. See, also, *Manufacturing Co. v. Wright*, 22 Fed. Rep. 631.)

3. Assignment—rights of assignee.

There are decisions not in harmony with the view that we have taken, but many of them are based upon statutes unlike ours, or in cases where there is no statute making the assignee the representative of the creditors. In some cases it appears to be held that an assignor cannot attack a fraudulent claim or conveyance, but may defend against one, and protect the property against all unjust and fraudulent claims, so that the property may be applied to the payment of the just debts of the assignor. Here, the debtor assigned all of his property, and the statute contemplates that it shall be distributed *pro rata* among all the creditors. The assignee represents the creditors who became such while the mortgage was withheld

Chapin v. Jenkins.

from the record and in the pocket of the mortgagee. By the negligence of the mortgagee, these creditors were allowed to deal with the assignor on the theory and faith that there was no incumbrance upon his goods; but when the assignment is made they are confronted with a secret lien, which was uncovered about the time the assignment was made. One of the purposes of our statute making mortgages void that are not forthwith recorded, and where there is no change of possession, is to prevent the setting up of such secret liens and incumbrances as are disclosed in this instance. Not only was the lien a secret one, but by the agreement of the mortgagee the mortgagor was permitted to dispose of his stock in his discretion, and to do as he pleased with the proceeds of the same. He was not required to pay the mortgage debt nor the expenses of sale, nor yet to account to the mortgagor or to anyone else for the money derived from the sale. Clearly this was a fraud, at least as to all creditors who became such after the execution and before the filing of the mortgage; and the assignee, in behalf of the creditors for whom he acts, may dispute the justice and validity of such claims, and defend against them, when set up by the party through whose fault the fraud and invalidity arises. This right of the mortgagor to buy and sell at pleasure without accounting related only to the stock of merchandise, and probably most of the goods in existence when the mortgage was made were not in the stock when the assignment was made. The tools and fixtures, however, were not embraced within this provision, and hence what has been said as to the stock will not apply to them. The ruling of the court, however, that the mortgage being good as between mortgagor and mortgagee, it was also good between the mortgagor and the creditors represented by the assignee, and that the assignee would not be permitted to show fraud in the mortgage, is deemed to be erroneous, and therefore there must be a reversal of the judgment.

All the Justices concurring.