John W. Hixon, The Johnston Fife Hat Co., *a corporation,* The William B. Grimes Dry Goods Co., and Louis DeSteiguer, v. Geo. C. Hubbell, John S. Gilmore and Edward E. Root.

1. CHATTEL MORTGAGE—*Lien.* A chattel mortgage in Oklahoma does not entitle the mortgagee to possession until after condition broken, but creates a lien in favor of the mortgagee, while the title remains in the mortgagor.

2. SAME—*Possession of Property.* On condition broken, the mortgagor may deliver possession to the mortgagee, and pass the title of the mortgaged chattels to him.

3. MORTGAGE—*Evidence of Title.* Where the mortgaged property is taken from the mortgagee by attaching creditors of the mortgagor, after condition broken and delivery of possession to the mortgagee, and the mortgagee brings suit for conversion, alleging ownership of the goods, the mortgage is one of the evidences of title, and it is not error to permit the same to be introduced in evidence in support of the allegation of ownership.

4. DEFAULT—*Delivery of Property.* After default in a chattel mortgage, the interest of the mortgagor in the mortgaged property may be divested by actual delivery of possession in satisfaction of the mortgage debt, and without resorting to foreclosure proceedings.

5. MORTGAGE—*Containing Power of Sale Not Fraudulent.* A mortgage of chattels, which contains a power of sale conditioned that the proceeds of such

sales shall be applied to the payment of the mortgage debt, is not *per se* fraudulent, as to the creditors of the mortgagor. The question of fraud is one of fact to be determined by the court or jury, and if made in good faith, such mortgages are valid and will be enforced.

6. APPELLATE COURTS—*Rule.* It is the settled policy of the appellate courts not to disturb the finding of the trial court upon disputed questions of fact, unless the finding is not supported by any evidence, or is manifestly against the weight of the evidence.

7. INDIANA CODE—*Procedure—Construction.* Our Code of Civil Procedure, Statutes 1890, was adopted from Indiana, and prior to its adoption by our legislature, the supreme court of Indiana held, that the provision of such court relating to trial of the rights of property, was only applicable to proceedings before a justice of the peace, and had no application to proceedings in the district court. (*Davis v. Warfield*, 38 Ind. 461.) And we are bound by this construction.

8. MORTGAGED CHATTELS—*Subject to Levy, When.* Under the Statutes of 1890, §§ 4623 and 4744, mortgaged chattels were only subject to levy and sale on attachment proceedings on condition that the purchaser should comply with the conditions of the mortgage and the sale of the goods by the sheriff and delivery of the same without requiring the mortgage debt to be paid, entitled the mortgagee to recover damages for conversion, or to his action on the official bond of the sheriff. (*State ex rel. Jessup v. Milligan et al.* 106 Ind. 109, followed.)

## *Error from the District Court of Logan County*

### STATEMENT OF FACTS.

On December 5, 1890, the defendants in error, as sureties for one Moses Whitbeck, executed a note to a bank at Fredonia, Kansas, for the sum of one thousand dollars, bearing interest at the rate of ten per cent. and payable ninety days after date. When said note matured Whitbeck was engaged in the mercantile business at Guthrie, O. T., and was the owner of a general stock of merchandise, consisting of dry goods, hats, caps, boots, shoes, clothing and notions of the value of from three to seven thousand dollars. The note was not paid at maturity, and on March 3, 1891, at the request of said sureties, Whitbeck executed to them a chattel mortgage upon said stock of goods to secure them against loss on said note. At the time of executing the chattel mortgage Whitbeck

15——IV.

was indebted to several mercantile creditors in various sums, and had no other property than the stock of merchandise embraced in the mortgage.

The mortgage contained a stipulation to the effect that if the mortgagees should, at any time, feel themselves insecure, they, or either of them, might take immediate possession of the mortgaged property, and sell the same in the ordinary course of business, or in such manner as said mortgagees might deem proper at public or private sale, and with or without notice, or so much thereof as might prove sufficient to pay the amount due on said note together with expenses incurred in the keeping and sale of said property, the excess, if any, to be paid to the mortgagor.

The mortgage contained this further provision:

"And it is further stipulated by and between said mortgagor and mortgagees, that until said mortgagees shall elect to take possession of said mortgaged property, that the said mortgagor shall have the right to sell said property in the usual course of retail trade, and all proceeds arising from such sales shall be promptly paid over to said mortgagees to be applied on the payment of said described note, and in making such sales, said mortgagor shall be deemed and considered the agent of said mortgagees, and such sales shall be for the use and benefit of said mortgagees until they are fully discharged from liability on said note."

On March 11, 1891, the mortgagees having failed to get the proceeds of sales from Whitbeck, took possession under their mortgage, with the consent of Whitbeck, and began the sale of goods at retail in the regular manner, and continued in such possession until March 16, when the goods were taken on writs of attachment, issued in causes in favor of the plaintiffs in error and against Whitbeck. The goods were sold at sheriff's sale and the

proceeds applied *pro rata* on the judgments of plaintiffs in error against Whitbeck, as provided in the Statutes of 1890, under which the proceedings were had.

The defendants in error, the mortgagees, paid the note of Whitbeck upon which they were sureties, amounting to one thousand two hundred, thirty-nine dollars and forty-five cents.   Thereafter they brought this action against the attachment creditors, the sheriff and De-Steiguer, who was surety on the attachment bonds, to recover damages for conversion of the goods described in their mortgage.   Issues were formed, and the cause was tried by the court and judgment rendered in favor of the mortgagees for eight hundred, ninety-six dollars and sixty-three cents.   From this judgment the plaintiffs in error appeal.

*Wisby & Hornor*, for plaintiffs in error.

*Chas. Brown*, for defendant in error.

The opinion of the court was delivered by

BURFORD, J.:   The petition in this case alleges that the plaintiffs were the owners of the goods in question at the date of the alleged conversion.   On the trial, to support this allegation, they introduced in evidence over the objection of the defendants the chattel mortgage executed to them by Whitbeck, and also showed by oral testimony the delivery of possession to the mortgagees by Whitbeck, or his agent, of the entire stock, and that they were in the actual possession of the goods at the time the attachments were levied.

This, it is contended, was error.   Counsel insist that in this territory a chattel mortgage only gives the mortgagee a lien upon the mortgaged chattels, and that the title is at all times in the mortgagor, and that a chattel

mortgage only creates a special interest, which must be specially pleaded, and that the interest acquired by a chattel mortgage will not support a general allegation of ownership. Conceding this construction to be true, as a general proposition, it does not follow that the rule is applicable in this case.

The chattel mortgage was at least an evidence of title, and as such evidence, was competent. Its weight was a question for the court, and there was no error in admitting it. In addition to this, the plaintiffs showed that actual psssession had been delivered under the mortgage. The mortgagor may waive his interest in the mortgaged property, and by delivering the property to the mortgagee after default or condition broken, in the absence of any agreement to the contrary, his title becomes absolute as against the mortgagor who voluntarily parts with his interest. The evidence in this case was competent and tended to prove ownership. The weight and effect of such evidence was a question for the trial court, and having found that it proved ownership, we can not disturb the finding.

It is further contended that the interest of the mortgagor can only be divested by a foreclosure of the mortgage. We can not accept this theory. It has frequently been held that after default in the mortgage, the mortgagee may replevin the mortgaged property, and an actual surrender of the property to the mortgagee and delivery of possession, divests the title of the mortgagor as completely as an unconditional bill of sale. Of course where there are creditors of the mortgagor, the courts should and will scrutinize such transaction closely to prevent collusion or fraud, but these are elements which vitiate all transactions into which they enter, and are no exceptions in cases of chattel mortgages.

It is not contended that the mortgage in question was void for bad faith. The question of the effect of a power of sale in mortgages of merchandise has been much discussed by the courts, and the general rule is, that an unconditional power of sale will defeat the mortgage as to creditors of the mortgagor, but when the power of sale is conditioned that the proceeds shall be applied to the payment of the mortgage debt, the decisions are by no means harmonious. The better reasoning seems to support the rule that such mortgages are not fraudulent *per se*, but the question is one of' fact to be determined by the court or jury, and if made in good faith are valid and may be enforced. There is nothing in this case to impeach the good faith of the parties, and there was no error in admitting the mortgage in evidence.

The plaintiffs in error contend that the judgment is excessive, in that the court did not credit the amount due defendants in error with the proceeds of sales made by the mortgagor prior to the change of possession. There was no direct or positive evidence as to what the proceeds of such sales were. The proceeds of sales as mentioned in the mortgage evidently means that sum which would remain after payment of current expenses incident to the business during the time such sales were being made. The evidence was not clear upon this question, and it is the settled policy of appellate courts not to disturb the conclusions of the trial court, unless the finding is unsupported by any evidence, or is manifestly against the weight of the evidence, If the defendants on the trial of the case below desired to show payment of all, or any part of the plaintiff's demand, it was incumbent on them to properly plead and prove such payment.

It is next complained that the court did not allow credit for the amount realized from sales during the few days

the mortgagees were in possession. Under the evidence in the case we can not say that the court erred in its final conclusion as to the amount of damages, and there is no positive proof as to whether any sum was actually realized from sales during such period.

The last proposition argued by appellants in their brief is, that the defendants in error are barred from maintaining this action by reason of having failed to claim the property in the hands of the sheriff and try the rights of property before sale, and we are referred to §§ 4905 and 5119, Statutes of 1890, in support of this contention.

Section 5119, of Oklahoma Statutes, 1890, is the general statute on the subject of replevin, and has no relation to the action for trial of rights of property. The Civil Code of 1890 was adopted from the Indiana Civil Code, and § 5905 corresponds to § 925 of Indiana Revised Statutes, 1881.

It was held by the supreme court of Indiana in *Davis v Warfield*, 38 Ind. 461, that this section has no application to attachment proceedings in the district court, but is only applicable to proceedings before a justice of the peace. The same was held in *Matlock v Strange*, 8 Ind. 57. We adopted the statute with this construction and are disposed to accept it.

There are a number of other alleged errors, but as they are not argued in the brief of the plaintiffs in error, we shall treat them as waived.

We find no error in the record which will warrant a reversal of the judgment. On the other hand, if the position of counsel for plaintiffs in error should be conceded, they are in no better position than at present. Section 4928, provides that attached property shall be

sold as on execution in other cases.     Section 4744, pro-
vides:

" Goods and chattels, liable to execution, pledged, as-
signed, or mortgaged, as security for any debt or con-
tract, may be levied upon and sold on execution against
the person making the pledge, assignment or mortgage,
subject thereto, and the purchaser shall be entitled to the
possession, upon complying with the conditions of the
pledge, assignment, or mortgage."

Under this provision of statute the supreme court of
Indiana has repeatedly held, that if an officer levies an
execution upon mortgaged property and sells same with-
out satisfying the mortgagees' claim, he becomes liable
on his official bond to the mortgagee for the amount of
the mortgage debt, or the mortgagee may have his action
for conversion against the purchasers, or may recover the
specific property. (*State, ex rel. Jessup v. Milligan et
al.* 106 Ind. 109; *Kackley et al. v. State, ex rel. Heitz,*
91 Ind. 437; *Sparks v. Compton,* 70 Ind. 393; *Syfers v.
Bradly,* 115 Ind. 345; *McDaniels v. State,* 118 Ind. 239.)

So in this case if it was conceded that the mortgagees
had no title, but only a lien at the time the attachments
were levied, there is nothing in this case that would in-
validate the lien, and the plaintiffs in error would be lia-
ble in any event to the mortgagees for the amount of the
mortgage debt, and Hixon would be liable on his official
bond for having failed to require a satisfaction of the
mortgage debt before delivery of the chattels on the sale
under the attachments.

It follows that if any error had been committed in the
trial of the cause, it has not resulted in any injury to the
plaintiffs in error. The judgment of the district court
is affirmed with costs.

Dale, C. J., having presided in the court below, and Bierer, J., having been of counsel in a collateral proceeding, not sitting ; all the other Justices concurring.