THE RANNEY-ALTON MERCANTILE COMPANY v. B. M. WATSON.

(Filed Feb. 8, 1901.)

MORTGAGE—*Provisions—Fraud—Attachment.* A mortgage given on a stock of goods which, by its terms, contains a provision that the mortgagor shall retain possession and control and have the ordinary use and benefit of the mortgaged property, and permits him to sell the same in the usual course of trade without restriction, and contains no requirement that the proceeds thereof shall be applied to the payment of the mortgaged debt, or that any accounting shall be made arising from the proceeds thereof, operates as a fraud upon the other creditors of the mortgagor, and is a sufficient ground to sustain an attachment.

(Syllabus by the Court.)

*Error from the Probate Court of Noble County; before Ethan Allen, Probate Judge.*

*J. W. Quick* and *W. H. Bowles,* for plaintiff in error.

*H. A. Smith* and *Henry S. Johnston,* for defendant in error.

### STATEMENT OF THE CASE.

It appears from the record in this case, that on the 20th day of March, 1899, and some time prior thereto, one Z. H. McCubbins was engaged in the retail grocery business, in the city of Perry; and that on March 20, 1899, the said McCubbins sold to the defendant in error, B. M. Watson, his entire stock of goods, and the said defendant in error immediately took possession thereof, and continued to conduct said business until the 31st of January, 1900, when the store was closed by the sheriff, under an order of attachment issued in this case. It further appears that at the time of the purchase of said stock of goods the defendant in error, Watson, executed to said McCubbins a chattel mortgage on the entire stock of goods to secure the unpaid balance of the purchase price of the same, but said mortgage was not recorded by McCubbins until January 19, 1900.

It further appears that the defendant continued to conduct a retail grocery business, purchasing goods from wholesale houses, on credit, and intermingling the same with the original stock purchased from McCubbins, selling and disposing of the same in the usual course of retail trade until some time in January, 1900, when certain creditors of the defendant began to press their claims for settlement.

It further appears that the chattel mortgage was not placed of record until after the Ranney-Alton Mercantile

company by their counsel, had presented their claim to the defendant, and insisted that the same must be paid or secured. It further appears that as soon as the plaintiff in error was informed that the McCubbins mortgage was placed of record, and the defendant failed and refused to pay its claim or secure the same, the said plaintiff in error brought its action in the probate court of Noble county to recover the sum of $111.74, on account of goods sold and delivered to the defendant at various times, between the sixth of July, 1899, and the eighteenth of October, 1899, and at the same time filed its affidavit for attachment, alleging that "said defendant is about to convert his property or a part thereof into money for the purpose of placing it beyond the reach of his creditors and is about to assign, remove and dispose of his property, or a part thereof, with intent to defraud, hinder and delay his creditors; and has assigned, removed and disposed of his property, or a part thereof, with the intent to defraud, hinder and delay his creditors; and fraudulently contracted the debt and incurred the liability and obligation for which the above named suit has been brought."

Thereupon an order of attachment was issued, and the sheriff levied the same on the stock of goods of the said defendant in error. The defendant in error filed a motion to dissolve the attachment, for the reasons that the allegations contained in the affidavit of attachment were untrue. The motion to dissolve the attachment was tried, by the court, and upon the request of the plaintiff, the court made the following findings of fact and conclusions of law:

### FINDINGS OF FACT.

"1st. The court finds that on March 20, 1899, Z. H. McCubbins was engaged in the retail grocery business in the

city of Perry, Noble county, Oklahoma, and on said day
the said McCubbins transferred to the defendant, B. M.
Watson, the entire stock of groceries and business, and on
said day retired from said business, and the said B. M.
Watson took possession of said grocery stock, and con-
tinued to run said business until closed under the order of
attachment issued in this cause.

"2nd.  To secure the unpaid balance of the purchase price
of said stock of goods, B. M. Watson made, executed and
delivered to Z. H. McCubbins a chattel mortgage on said
stock of goods, a copy of which mortgage is hereto at-
tached and marked "Exhibit A," which mortgage was not
placed of record by the said McCubbins until January 19,
1900, nearly one year after it was executed and delivered
to said McCubbins.

"3rd.  That after the execution and delivery of the said
mortgage to the said McCubbins, the defendant assumed
control of the grocery business, and continued in the
carrying on of the retail grocery business in the city of
Perry, Oklahoma, purchasing goods from wholesale houses
and selling the same in the usual course of retail trade,
and continued in such business until the order of attach-
ment was levied in this cause.  That during said time
the defendant purchased of the plaintiff, a corporation en-
gaged in the wholesale grocery business at Arkansas City,
Kansas, on credit, the goods, wares and merchandise men-
tioned in the petition of the plaintiff.

"4th.  That after the claim of the plaintiff became due
and on about the ——— day of January, 1900, the plain-
tiff through its attorney, presented its claim to the de-
fendant for payment, and the defendant acknowledged the
account, but pleaded inability to pay the same at that
time.  That counsel for plaintiff in a day or two again
presented the account, and insisted that the same must be
paid or secured, and was again informed of defendant's
inability to pay the same at that time.  Said attorney at
that time examined the record and found no lien of any

kind against defendant. That shortly thereafter the mortgage of said McCubbins was filed of record in the office of the register of deeds of Noble county. That counsel for plaintiff after learning of the filing of the mortgage of record, notified plaintiff of the filing of the same and shortly thereafter this cause was filed in the probate court of Noble county, Oklahoma Territory, and an order of attachment obtained on the affidavit filed therein for attachment, which order of attachment was served by the officer levying on the stock of groceries owned by the defendant.

"5th. The defendant files an affidavit denying the grounds of attachment, and also a motion to dissolve the attachment for the reason that the grounds laid in the attachment affidavit are untrue, which motion to dissolve is tried with the general issue in said cause.

### CONCLUSIONS OF LAW.

"1st. The court therefore finds as conclusions of law that the defendant, B. M. Watson, is indebted to the plaintiff in the sum of ($111.74) one hundred and eleven dollars and seventy-four cents, for goods, wares and merchandise sold, with interest thereon from October 18, 1899, at the rate of seven per cent per annum.

"2nd. The court cannot conclude from the above findings that the defendant either had or was about to dispose of his property for the purpose of hindering, delaying or defrauding his creditors. It is true the mortgage is void as against creditors of the mortgagor, but no claim is made in this case under the mortgage, and the court concludes that the giving of the mortgage under the circumstances as shown by the findings of fact, which mortgage is not recorded by the mortgagee until after the debt is made, will not warrant and authorize the issuance of an order of attachment against the mortgagor. We hold that the attachment was improperly issued and the motion to dissolve should be and is sustained. To which second conclusion of law the plaintiff excepts.

" ETHAN ALLEN, Probate Judge."

On April 12, 1900, the court sustained the defendant's motion to discharge the attachment, and rendered judgment in favor of the plaintiff for the amount of his claim against the defendant. The plaintiff, The Ranney-Alton Mercantile company, excepted to the ruling of the court discharging the attachment, and brings the case here on appeal for review. .

Opinion of the court by

HAINER, J.: The chattel mortgage referred to in the findings of fact of the trial court contains the following provisions:

"In case said mortgagee shall at any time hereafter feel unsafe or insecure, he shall be entitled to and may take and hold possession of said mortgaged property at the expense of said mortgagor, until payment of said note, or performance of the act for the performance of which this mortgage is security.

"If, however, said mortgagee shall not take possession of said property for the reason aforesaid, then said mortgagor shall retain possession and control, and have the ordinary use and benefit of said mortgaged property at his own expense as the owner thereof, until default, or until a breach of one or more conditions of this mortgage, which are agreed upon by the parties hereto, as follows:

"First. Said mortgagor shall keep the actual possession and control of said property."

It will thus be seen that by the terms of said mortgage the mortgagor was to "retain possession and control and have the ordinary use and benefit of said mortgaged property;" and it appears from the findings of the court that the defendant did retain possession and control of the entire stock of goods mortgaged to McCubbins, which was sold to him in the usual course of retail trade, and

during that period the defendant purchased on credit other goods from the plaintiff in error which were intermingled with the stock of goods on hand, and sold in like manner, without notice or knowledge to the plaintiff in error that the entire stock of goods had been mortgaged by the defendant to McCubbins.

A mortgage given on a stock of goods which, by its terms, contains a provision that the mortgagor shall retain possession and control, and have the ordinary use and benefit of the mortgaged property, and permits him to sell the same in the usual course of trade without restriction, and contains no requirement that the proceeds thereof shall be applied to the payment of the mortgaged debt, or that any accounting shall be made arising from the proceeds thereof, operates as a fraud upon the other creditors of the mortgagor, and is a sufficient ground to sustain an attachment.

In *Bank of Perry v. Cook*, 3 Okla. 534, this court has laid down the following rule:

"Where at the time of the execution of a chattel mortgage, it is understood and agreed between the parties that the mortgagor shall be allowed to remain in possession of the mortgaged property and sell and dispose of the same in the ordinary course of trade, and apply the proceeds to his own use, the mortgage is absolutely void as to the creditors of the mortgagor."

And,

"It does not matter whether such agreement is oral or in writing, contained within the mortgage or without, if such an agreement was had, the mortgage is fraudulent and void as to creditors."

In *Robinson v. Elliott*, 22 Wallace 513, the supreme court of the United States held that a mortgage of a stock of

goods, containing a provision authorizing the mortgagor to retain possession for the purpose of selling in the usual course of trade, and to use the money thus obtained to replenish his stock; is invalid, and the court can, as a matter of law, pronounce it void. And where the mortgage on its face shows the legal effect of it is to delay creditors, the law imputes to it a fraudulent purpose.

Mr. Justice Davis, in delivering the opinion of the court in this case used the following language:

"The creditor must take care in making his contract that it does not contain provisions of no advantage to him, but which benefit the debtor, and were designed to do so, and are injurious to other creditors. The law will not sanction a proceeding of this kind. It will not allow the creditor to make use of his debt for any other purpose than his own indemnity. If he goes beyond this, and puts into the contract stipulations which have the effect to shield the property of his debtor, so that creditors are delayed in the collection of their debts, a court of equity will not lend its aid to enforce the contract."

And again the learned justice in the course of his opinion upon this subject said:

"Whatever may have been the motive which actuated the parties to this instrument, it is manifest that the necessary result of what they did do was to allow the mortgagors, under cover of the mortgage, to sell the goods as their own, and appropriate the proceeds to their own purposes; and this, too, for an indefinite length of time. A mortgage which, in its very terms, contemplates such results, besides being no security to the mortgagees, operates in the most effectual manner to ward off other creditors; and where the instrument on its face shows that the legal effect of it is to delay creditors, the law imputes to it a fraudulent purpose."

In *Chapin v. Jenkins*, 50 Kan. 385, 31 Pac. 1084, it was held that:

"A mortgage of a stock of merchandise, not recorded, which by its terms permits the mortgagor to retain possession of and sell the stock without restriction, and which contains no requirements that the proceeds shall be used in the payment of the mortgage debt, or that any accounting shall be made for the proceeds, operates as a fraud upon the creditors of the mortgagor, and is void."

In *Leser v. Glasor*, 32 Kan. 546, 4 Pac. 1026, Mr. Justice Valentine in delivering the opinion of the court said:

"Where the mortgagor is permitted to retain the possession of the mortgaged property, and to sell the same he should be permitted to do so only as the agent or trustee of the mortgagee. To permit the mortgagor to act in any other capacity would tend to show bad faith and fraud, and just such bad faith and fraud as will sustain an attachment."

In *Anderson v. Patterson*, 64 Wis. 557, it was declared that a chattel mortgage given with the understanding, express or implied, that the mortgagor shall go on selling the property in the usual course of trade and applying the proceeds to his own use, is fraudulent as to his other creditors, and is ground for an attachment.

Mr. Justice Lyon, in delivering the opinion of the court said:

"That the inevitable tendency and effect of a mortgage, fair and valid on its face, but void because of some extrinsic or secret infirmity, must be to hinder and delay the creditors of the mortgagor in the collection of their debts, is perfectly obivious, and the parties thereto cannot be heard to say that they did not intend that such effect should result from their actions. (*Butts v. Peacock*, 23 Wis. 359.) In *Place v. Langworthy*, 13 Wis. 629, the present chief justice said that such an agreement in a mortgage is directly calculated to hinder, delay and defraud the creditors of the mortgagor, and is therefore neces-

sarily injurious to them, and strictly within the statute of frauds. This is also, because the mortgage apparently places the property beyond the reach of such creditors, and drives them to a contest with the fraudulent mortgagee if they seek to enforce payment of their demands out of the property thus fraudulently disposed of or incumbered. When property is mortgaged to one creditor to secure his demand, good faith to other creditors of the mortgagor requires that if the same is sold, the proceeds shall be applied to the payment of the mortgage debt."

Applying the doctrine announced by these authorities to the case under consideration, we hold that the chattel mortgage in question was fraudulent and void, and that it operated to hinder and delay the plaintiff in error in the collection of his just claims and was therefore, a sufficient ground for the issuance of an attachment in this action.

The judgment of the probate court in sustaining the motion to dissolve the attachment is, therefore, reversed and the cause remanded with directions to overrule said motion and to sustain the attachment issued herein.

All of the Justices concurring.