## CLARK v. HUCKABY et al. *

Circuit Court of Appeals, Eighth Circuit.
August 14, 1928.

No. 7995.

*Certiorari denied by Supreme Court 49 S. Ct. 83, 73 L. Ed. —.

W. C. Hughes, of Montgomery City, Mo., and Henry L. Fist, of Tulsa, Okl. (Charles L. Yancey, of Tulsa, Okl., on the brief), for appellant.

G. C. Spillers, of Tulsa, Okl. (Turk & Mauldin, of Tulsa, Okl., on the brief), for appellees.

Before LEWIS, Circuit Judge, and SCOTT and DAVIS, District Judges.

DAVIS, District Judge. The referee in bankruptcy for the Northern district of Oklahoma sustained the lien of a chattel mortgage as to certain store fixtures and denied the lien as to a certain stock of merchandise. The District Court on a petition to review sustained the lien as to both the store fixtures and the stock of goods. The case is brought here on appeal allowed by the court below.

I. The facts were stipulated by the parties. They are in brief, as follows: H. C. Huckaby, appellee, was the owner of a stock of merchandise and fixtures located at Jenks, Okl., on which there was no indebtedness. He sold this stock of goods on January 17, 1925, to George J. and Bess E. Kramer, for a total consideration of $9,036.35. This consideration was paid, $1,500 in cash, and the balance by the execution of two notes, one in the sum of $1,500, and the other in the sum of $6,036.35. These two notes were secured by a chattel mortgage on the stock of

goods. The mortgage contained the following provisions:

"(1) That the $1,500 note above referred to was to be paid by the application thereto of one-half of the first $3,000 received by the Kramers from the sale of merchandise;

"(2) That the $6,036.35 note was to be paid at the rate of $100 per month."

This mortgage was recorded in Tulsa county on January 20, 1925. The $1,500 note was paid from the proceeds of the sales out of the stock of merchandise as provided in the mortgage. On the other note there were payments made aggregating $2,136.35, leaving a balance of $3,900. The purchasers of the stock of goods, entered into possession on the date of the purchase and remained in possession until they filed a voluntary petition in bankruptcy, on December 22, 1926. A very short time after this petition was filed, "probably not more than one hour," the appellee, Huckaby, appeared at the premises of the Kramers, and, in their absence, took possession of what remained of the stock of goods and the store fixtures. On the same day the petition in bankruptcy was filed, W. H. Clark, appellant, was appointed receiver in bankruptcy, and, upon demand, the appellee surrendered to him, as such receiver, the stock of merchandise and the fixtures.

Thereafter the appellee was granted leave, and filed his petition of intervention in the bankruptcy case, wherein he set up the above facts, and prayed that it be ordered and decreed that he had a first and prior lien on the stock of merchandise, and the store fixtures, and that it be determined that he was the owner thereof and entitled to the immediate possession, and that the receiver be ordered to deliver the said property to the intervener.

During the pendency of the case in the bankruptcy court, in accordance with a stipulation of the parties, the receiver sold the stock of merchandise and fixtures and retained the proceeds, $2,725, in his hands awaiting the final determination of the litigation.

At the time the mortgage was executed, the Kramers had no outstanding debts and all of the indebtedness at bankruptcy was created subsequent to the execution and the recording of the chattel mortgage.

■ II. During the argument of this case, appellee filed a motion to dismiss the appeal on the ground that it was allowed by the District Court, and not by this court.

An appeal under section 24b of the Bankruptcy Act (USCA tit. 11, § 47b), as amended May 27, 1926, must be allowed by the appellate court. An appeal under sections 24a and 25a of the Bankruptcy Act as amended (USCA tit. 11, §§ 47a and 48a), is properly allowed by the District Court. The nature of the proceeding determines the question as to the manner of seeking a review. The "proceeding in bankruptcy," reviewable under section 24b as amended, are the ordinary administrative orders entered of necessity in the course of every bankruptcy case. The statute contemplates that the administration of estates should not be interrupted by a proceeding to review such orders of the court of bankruptcy, except in the cases for which provision is made in section 25a, as amended, unless the appellate tribunal in its discretion authorizes the appeal. In the Matter of Loving, 224 U. S. 183, 32 S. Ct. 446, 56 L. Ed. 725; Rutherford v. Elliott (C. C. A.) 18 F.(2d) 956, 10 A. B. R. (N. S.) 102; Broders v. Lage, Bankrupt (C. C. A. 8) 25 F.(2d) 288; Stanley's Incorporated Store v. Earl, Bankrupt (C. C. A. 8) 25 F.(2d) 458, filed March 30, 1928.

■ The judgment sought to be reviewed in this case was one entered on an issue presented by an intervening petition. The intervener did not assert a claim for the balance due on the mortgage notes. He asked to be declared the owner of the property in the hands of the receiver. The purpose of the action was to establish a lien upon certain property, independent of, and not incidental to, the allowance of a demand. The court sustained the intervener's contention and as the property had, by the stipulation of the parties, been sold and converted into cash, the intervener was given judgment in the sum of $2,725, less costs. This sum did not represent the amount due on the notes, but was the amount of cash derived from the sale of the property. This judgment was not an ordinary administrative determination of a question arising in a bankruptcy proceeding, and consequently was not appealable under section 24b.

The issue here presented is properly reviewable as a controversy arising in a bankruptcy proceeding under section 24a, as amended, of the Bankruptcy Act. The Supreme Court in the case of Taylor, Trustee, v. Voss, Trustee, 271 U. S. 176, 46 S. Ct. 461, 70 L. Ed. 889, 7 A. B. R. (N. S.) 706, said:

"It is now settled by the decisions of this court, that the 'controversies arising in bankruptcy proceedings' referred to in section 24a, include those matters arising in the course of a bankruptcy proceeding, which are not mere steps in the ordinary administra-

tion of the bankrupt estate, but present, by intervention or otherwise, distinct and separable issues between the trustee and adverse claimants concerning the right and title to the bankrupt's estate. * * * In such 'controversies' the decrees of the court of bankruptcy may be reviewed by appeals which bring up the whole matter and open both the facts and the law for consideration." Knapp, Trustee, v. Milwaukee Trust Co., 216 U. S. 545, 30 S. Ct. 412, 54 L. Ed. 610, 24 A. B. R. 761; Houghton v. Burden, 228 U. S. 161, 33 S. Ct. 491, 57 L. Ed. 780, 30 A. B. R. 16; Foster v. McMasters (C. C. A. 8) 15 F.(2d) 751; In re Hartzell (C. C. A. 8) 209 F. 775.

The motion to dismiss is without merit, as the appeal was properly allowed by the District Court.

III. The appellant asserts that the chattel mortgage was void as to creditors and does not constitute a lien on the property of the bankrupt estate, because the mortgagors were allowed to remain in possession of the mortgaged property, and to sell the same in the regular course of business, and to apply the proceeds to their own use.

This issue must be determined by the application of the law of the state where the property was located, the mortgage executed and recorded. In Etheridge v. Sperry et al., 139 U. S. 266, 11 S. Ct. 565, 35 L. Ed. 171, the court held:

"While chattel mortgages are instruments of general use, each state has a right to determine for itself under what circumstances they may be executed, the extent of the rights conferred thereby, and the conditions of their validity. They are instruments for the transfer of property, and the rules concerning the transfer of property are primarily, at least, a matter of state regulation. We are aware that there is great diversity in the rulings on this question by the courts of the several states; but whatever may be our individual views as to what the law ought to be in respect thereto, there is so much of a local nature entering into chattel mortgages that this court will accept the settled law of each state as decisive in respect to any case arising therein."

See, also, Holt v. Crucible Steel Co., 224 U. S. 262, 32 S. Ct. 414, 56 L. Ed. 756, 27 A. B. R. 856; Thompson v. Fairbanks, 196 U. S. 516, 25 S. Ct. 306, 49 L. Ed. 577, 13 A. B. R. 437.

By the terms of the chattel mortgage the mortgagors were permitted to remain in possession of the stock of goods, and to make sales from said stock. One-half of the first $3,000 received from such sales was to be applied in payment of the $1,500 mortgage note, and the balance the mortgagors were permitted to retain. After the payment of this note no accounting, whatsoever, was required of the mortgagors in the making of sales, but they were obligated to pay $100 per month on the other mortgage note. The receiver contends that these provisions of the mortgage render it a nullity.

The validity of such a mortgage was before the Oklahoma Territory court in the case of Bank of Perry v. Cooke et al., 3 Okl. 534, 41 P. 628, where it was said:

"It seems that this case comes clearly within the rule as laid down by the authorities cited, and that it cannot meet the test. The mortgagor undoubtedly was allowed to retain possession of the stock of goods, carry on his business in the usual course of trade and apply the proceeds to his own use. We believe that the better rule is that such a mortgage should be held as absolutely void as to creditors. We do not think that when such a state of facts presents itself it becomes a question of fact as to fraud, but that it is a question of law. Being a question of law we cannot say that the court erred in holding the mortgages void."

The Oklahoma court in the above case reviewed the authorities at length and quoted approvingly from the case of Robinson v. Elliott, 22 Wall. 513, 22 L. Ed. 758, where it was said:

"Whatever may have been the motive which actuated the parties to this instrument, it is manifest that the necessary result of what they did do was to allow the mortgagors, under cover of the mortgage, to sell the goods as their own, and appropriate the proceeds to their own purposes, and this, too, for an indefinite length of time. A mortgage which, in its very terms, contemplates such results, besides being no security to the mortgagees, operates in the most effectual manner to ward off other creditors; and where the instrument on its face shows that the legal effect of it is to delay creditors, the law imputes to it a fraudulent purpose. The views we have taken of this case harmonize with the English common-law doctrine, and are sustained by a number of American decisions."

The same question was again before the state court in the case of Will T. Little Co. v. Burnham, 5 Okl. 283, 49 P. 66, and the court not only adhered to its previous ruling, but declared that the honest intentions of the parties did not make such an instru-

ment binding upon creditors. This is the language of the court:

"Possession [of a stock of merchandise] having been here left to the mortgagor, with the privilege of appropriating, according to the terms of the mortgage, a part of the property to his own use, his possession was his own possession, and not that of the mortgagee. The intention of the parties may have been absolutely fair and honest. The mortgagee may have believed that his mortgagor would appropriate the proceeds to the payment of the mortgage debt; the mortgagor may have honestly intended to do so. But the mortgage was void, as a matter of law."

In Ranney-Alton Merc. Co. v. Watson, 10 Okl. 675, 65 P. 98, the doctrine of the case of Bank of Perry v. Cooke, supra, was again expressly approved, the court saying:

"A mortgage given on a stock of goods which, by its terms, contains a provision that the mortgagor shall retain possession and control and have the ordinary use and benefit of the mortgaged property, and permits him to sell the same in the usual course of trade without restriction, and contains no requirement that the proceeds thereof shall be applied to the payment of the mortgage debt, or that any accounting shall be made arising from the proceeds thereof, operates as a fraud upon the other creditors, * * * and is a sufficient ground to sustain an attachment."

In Godfrey et al. v. Hutchinson Wholesale Grocer Co., 12 Okl. 459, 71 P. 627, the court said that the rule announced in Bank of Perry v. Cooke, supra, was the settled law of Oklahoma. See, also, Hoppe Hdwe. Co. v. Bain et al., 21 Okl. 177, 95 P. 765, 17 L. R. A. (N. S.) 310.

Some stress has been placed upon the fact that at the time of the execution of the mortgage there were no creditors and that all goods placed into stock by the mortgagor were to be paid for in cash. In other words, it was asserted that the question of fraud was one of fact and not of law. The cases of Godfrey et al. v. Hutchinson Wholesale Grocer Co., 12 Okl. 459, 71 P. 627, supra, and Hixon et al. v. Hubbell et al., 4 Okl. 224, 44 P. 222, announce the rule that fraud is a question of fact to be determined by the court or the jury. But upon examining these cases it will be found that the mortgages, while containing the power of sale, also provided that the proceeds of the sale were to be applied on the mortgage debt. In such cases the mortgages were not fraudulent as a matter of law, but it became a question

of fact as to whether or not the purpose of the parties in executing them was to hinder, delay, or defraud creditors, and this was to be determined from the facts in each case. But in the case now before the court the mortgage on its face showed that sales were to be made from the stock in the ordinary and usual course of business. The proceeds of these sales were to be absolutely retained by the mortgagors, except that of the first $3,000 of goods sold they should be required to apply $1,500 to the mortgage debt. So that the question here was not one of fact as to whether the parties intended to defraud in the execution of the instrument. The mortgage on its face was fraudulent as a matter of law according to the decisions of the courts of Oklahoma.

■ IV. This proceeding in bankruptcy was instituted by the filing of a voluntary petition. The order of adjudication was immediately made and was followed by the appointment of a receiver to take charge of the property. The stock of merchandise and the store fixtures composed the entire assets of the estate. The receiver sold this property and the proceeds, $2,725, remains in his hands. The claim of the appellee amounts to $3,900. We have been urged to hold that, as the mortgage was valid between the parties, and as the title of the receiver is the same as that of the mortgagor, it could not be asserted by the receiver that the mortgage was invalid. When the bankruptcy proceeding was filed, in effect, a levy was made upon the bankrupts' property by their creditors. The appellee then appeared and asserted his right to the entire assets, basing it upon the existence of the chattel mortgage. Section 67a (USCA tit. 11, § 107a) of the Bankruptcy Act provides:

"Claims which for want of record or for other reasons would not have been valid liens as against the claims of the creditors of the bankrupt shall not be liens against his estate."

This section is applicable to the situation that confronts us in this case, the mortgage being invalid as to creditors of the mortgagors, it is invalid as to creditors of the bankrupt's estate. Dodge v. Norlin (C. C. A. 8) 133 F. 363, 13 A. B. R. 176; In re First Natl. Bank of Canton (C. C. A.) 135 F. 62, 14 A. B. R. 180.

■ The receiver in this case was appointed subsequent to the adjudication. He therefore became more than a mere custodian of the property in the course of administration. The trustee subsequently to be selected will be vested with the title to the bank-

rupts' property, by relation, as of the time of the filing of the petition and the adjudication. A trustee should have, but has not, been named. It is the statutory duty of the receiver to preserve the property until the selection of the trustee, so-that it will be available for the proper administration of the estate. It certainly cannot be that, because there has been no trustee selected, liens such as the one here presented must be sustained, whereas, if the trustee were in charge of the estate, he would have a perfect defense. The effect of such a holding in this case would be that the entire estate would be diverted from those justly entitled to it. We do not think such a contention as that made by the appellee here has ever been sustained. See In re Dempster, 172 F. 353 (C. C. A. 8) 22 A. B. R. 751; In re Gottlieb & Co. (D. C.) 245 F. 139; In re Marcuse & Co. (C. C. A.) 11 F.(2d) 513.

V. There are other questions in this case. The mortgage by its terms did not cover the store fixtures, but the parties stipulated that they were omitted by inadvertence. The instrument designates the appellee as mortgagor, and George J. and Bess E. Kramer as mortgagees, when the evident intention was to the contrary. Our conclusion renders a consideration of these matters unnecessary.

The motion to dismiss the appeal is overruled. The judgment is reversed and remanded, with directions for further proceedings not inconsistent with the views herein expressed.