# McDowell *v.* Steele.

*Bill in Equity by Judgment Creditor, to set aside Mortgages as Fraudulent.*

1. *Conveyance by failing or insolvent debtor to creditor; validity as against other creditors.*—A failing or insolvent debtor may select one or more of his creditors, and pay them in full, even though he thereby disables himself to pay anything to the others; but, if the conveyance or arrangement, going beyond the limits of full payment or security, stipulates or provides, openly or secretly, for a benefit to the debtor himself beyond what the law allows or secures to him, it is fraudulent on his part; and if the grantee, or secured creditor, knows of the existence of other debts left unprovided for, or has knowledge of facts calculated to put him on inquiry as to them, he is charged with participation in the fraud.

2. *Mortgage by embarrassed debtor to creditor, stipulating for long time; validity as against other creditors.*—A mortgage executed by an embarrassed (if not insolvent) debtor, conveying lands as security for a debt less than their value, which was to be paid in nine annual installments, the whole interest payable annually, and with power of sale on default in the payment of the third installment; followed on the next day by a second mortgage on the property, to the mortgagor's wife,

[McDowell v. Steele.]

who was the mother of the first mortgagee,—*held* fraudulent in law, both as securing a valuable benefit to the mortgagor, and as hindering and delaying another creditor, whose debt was reduced to judgment on the next day, of which debt the mortgagee had notice, actual or constructive, having knowledge of facts sufficient to put him on inquiry.

APPEAL from the Chancery Court of Wilcox.

Heard before the Hon. THOS. W. COLEMAN.

The bill in this case was filed on the 3d March, 1885, by David A. Steele, as a judgment creditor of John R. Mc-Dowell, with an execution returned "No property found," against said McDowell, his wife, Daniel S. Pritchett, and others; and sought to set aside, as fraudulent, two mortgages executed by said McDowell, one to his wife, and the other to said Pritchett, and to subject the property to the satisfaction of the complainant's judgment. The complainant died pending the suit, and it was revived in the name of O. D. Steele as his administrator. The complainant's debt originated in the liability of his guardian, R. H. Dawson, on whose bond said John R. McDowell and one P. D. Burford were sureties. A final settlement of the guardian's accounts was had in the Probate Court on the 13th March, 1884, when a decree was rendered against him, in favor of the ward, for $2,830.75, besides costs. An execution on this decree was issued on the 10th April, 1884, which was returned "No property found;" and another execution was then issued against the guardian and his sureties, on which the same return was made, on the 7th February, 1885. The mortgage to Pritchett was dated March 14th, 1884, and was given to secure a recited indebtedness of $7,000, evidenced by McDowell's nine notes, of even date with the mortgage, each for the sum of $777.78, payable on the 1st December, each year, from 1885 to 1893 respectively, with interest payable annually; and it contained a power of sale, on default in the payment of the third note. The mortgage to Mrs. McDowell, the wife of said John R. McDowell, was dated March 15th, 1884, and purported to secure an indebtedness of $6,674.28; conveying the same lands, and containing a power of sale if the debt was not paid by the 15th December, 1885. The bill alleged, on information and belief, that these mortgages conveyed all the lands belonging to said McDowell; that he was in fact not indebted to either of the mortgagees; that all of the parties had knowledge of the decree in favor of the complainant, and that the mortgages were intended to hinder and delay him in the collection of

his debt, and to prevent the property of McDowell from being subjected to liability on the guardian's bond. Burford, the other surety on the bond, had died before the probate decree was rendered, and his administratrix was made a defendant to the bill; but the points raised by her in defense have no bearing on the present appeal.

A demurrer to the bill was overruled by Chancellor McSpadden, and his decree was affirmed by this court on appeal.—*Burford v. Steele*, 80 Ala. 147. Separate answers were filed by the defendants. McDowell denied all the charges of fraud; denied that he had knowledge of the decree in favor of the complainant when he executed the mortgages, and denied that they conveyed all of his lands; and he alleged that the indebtedness recited in each mortgage was a valid and subsisting debt. The indebtedness to his wife, he said, was for moneys belonging to her statutory estate, which he had received at different times during coverture, and for which he had never accounted to her; and the debt to Pritchett, he said, accrued in this way: Respondent was the administrator of the estate of David Kennedy, deceased, and on the final settlement of his accounts, in June, 1882, two decrees were rendered against him, in favor of Pritchett as guardian of one of the minors, which together amounted to $5,157.86; and at his instance and request, at the time the mortgage was executed, Pritchett assumed the payment of these decrees, the ward having attained majority, and advanced to him in cash the balance of the recited $7,000, taking the mortgage as security for the entire amount. Pritchett and Mrs. McDowell, in their respective answers, asserted the validity of their respective mortgages, and stated the consideration substantially as McDowell had stated it; and each denied knowledge or notice of the indebtedness to the complainant at the time their mortgages were taken.

On final hearing, on pleadings and proof, the chancellor rendered a decree for the complainant, declaring each of the mortgages to be fraudulent and void; and this decree is here assigned as error by each of the defendants separately.

WATTS & SON, and J. N. MILLER, for appellants.—The mortgages assailed in this case are not fraudulent, either in law or in fact. The indebtedness secured by each, as recited on its face, is proved strictly as alleged; and each is a valid debt which might be thus secured. That the indebt-

edness of the husband to his wife, for moneys belonging to her statutory estate, which he has received and appropriated, may be thus paid or secured, see cases cited in Brick. Digest, vol. 3, p. 543, § 19. The indebtedness to Pritchett was created at the time his mortgage was executed, the greater part of it being his assumption of a decree in his own favor, on which he might have had execution issued; and it is shown that this settlement of the matter had been a subject of negotiation between the parties for several months. If a fraud on other creditors was intended, they would not have waited until after the complainant's demand was reduced to judgment, before consummating their arrangements by proper writings. The value of the mortgaged property is proved to have been between $9,000 and $10,000; more than $2,000 above the debt to Pritchett, but $3,000 less than the aggregate of the two debts. If the mortgage to Pritchett had been an absolute conveyance, this excess of value might have been fatal to it; but the principle has no application to a mortgage. There is no proof that McDowell owed any other debt than the complainant's decree, of which the mortgagees had no notice, and the amount of which did not equal the value of McDowell's other property. McDowell's liability to complainant was contingent until reduced to judgment. His testimony shows that he had no actual knowledge of the decree, and he might well have rested secure, knowing that the funds of Dawson's ward had been loaned to Burford, the other surety on the bond, whose estate was primarily liable for the debt; and if the sureties were equally bound to pay the decree, less than $3,000, his share was less than $1,500. The mortgagees had no notice of this contingent liability, and the mortgagor himself, having personal property of value more than $2,000, and other lands worth $4,000, might lawfully give them security. The grant of long time in a mortgage, while the mortgagor retains possession of the property, is a badge of fraud; but the long time granted in the mortgage to Pritchett is more specious than real, since a power to foreclose is given on default in the payment of the third note, and the interest on all of the notes is payable annually. It must be remembered, too, that fraud is never to be presumed, but must be affirmatively proved.—*Thames v. Rembert*, 63 Ala. 561; 51 Ala. 235; 50 Ala. 590; Jones on Mortgages, vol. 1, § 627; Bump on Fraud. Conv. 46; 64 Ala. 520; *Crawford v. Kirksey*, 55 Ala. 282; 68 Ala. 149; 26 Ala. 184.

[McDowell v. Steele.]

JNO. Y. KILPATRICK, *contra*, relied on the chancellor's opinion, and cited the following authorities: *Thames v. Rembert*, 63 Ala. 561; *Williams v. Avery*, 38 Ala. 115; *McLeod v. Powe*, 76 Ala. 418; *Lehman, Durr & Co. v. Kelly*, 68 Ala. 192; *Levy v. Williams*, 79 Ala. 171.

STONE, C. J.—The testimony is very satisfactory in support of the proposition, that in March, 1884, McDowell was indebted to Pritchett, and to Mrs. McDowell, in the sums severally claimed by them. We think, also, that the property mortgaged to them was not excessive in value, taking into account the amount of the indebtedness. It is also well settled, under our system, that a failing debtor, who is unable to pay all his debts, may elect whom he will pay, and pay them in full, although he thereby disables himself to pay any thing to his other creditors. But this last principle has its limit, which is as well defined and universal as the principle itself. It is this: The arrangement or adjustment by which the creditor secures, or attempts to secure his own claim, must not stipulate for, or openly or secretly secure or provide, any benefit to the debtor beyond what the law, without such agreement, would secure to him. If the security transcend this boundary, it is fraudulent as to the failing debtor; and if the secured creditor knows of other debts unprovided for, or, what is the same thing, has information calculated to put him on inquiry, which, if followed up, would lead to the discovery of other debts, then it is fraudulent as to him. 3 Brick. Dig. 517, § 137; *Hodges v. Coleman*, 76 Ala. 103; *Pope v. Wilson*, 7 Ala. 690; *Wiley v. Knight*, 27 Ala. 336; *Reynolds v. Welch*, 47 Ala. 200; *McWilliams v. Rogers*, 56 Ala. 87; *Lehman v. Kelly*, 68 Ala. 192; *Seaman v. Nolen*, *Ib.* 463; *Pritchett v. Pollock*, 82 Ala. 169; *Hopkins v. Campbell, ante*, p. 179; *Lukins v. Aird*, 6 Wall. 78; 3 Brick. Dig. 679, § 10; *Tillman v. Thomas, ante*, p. 321.

It is contended that McDowell, after making these mortgages, retained sufficient unincumbered property to pay the debt which the bill seeks to enforce. We have examined all the testimony bearing on this question, and, without commenting on it, we hold it wholly insufficient to make this contention good. We hold that, at and before making the mortgages, Mr. McDowell was practically insolvent. Else why want twelve years within which to work out and pay his debts?

Is there sufficient evidence that Pritchett had actual knowl-

32

edge, when he obtained his mortgage, that McDowell was otherwise indebted than to him, Pritchett, and to Mrs. McDowell?

Pritchett testifies that, at that time, he did not know that McDowell owed any other than the two debts; the one to himself, and the other to Mrs. McDowell, his mother. The questions may naturally arise, why should he demand a mortgage security of McDowell, if the latter owed no other debts? and, on what principle could he account for McDowell's wish to obtain twelve years indulgence, and his own consent to grant him more than nine? McDowell, Pritchett's witness, sheds light on this. He testified as follows: "The last of November, or first of December, 1883, I had been trying to sell the Fail plantation, to meet that debt [the chief consideration of the mortgage made to Pritchett, March 14, 1884], but could not effect a sale of it. So I proposed to him [Pritchett], as he had money, that he would pay up said decrees, and give me time to pay him, and to pay up my other debts. He asked what time I wanted. I told him, if he gave me twelve years, I thought I could pay him some along every year, and pay up my other debts. He said, 'No; but I tell you what I will do: if you will give me a mortgage on more lands than the Fail place, I will give nine years.' . . . I told him I would do it, and that was agreed to by both of us."

Pritchett's testimony of this transaction is as follows: "I wanted to help him [McDowell], if possible, by giving him time, and, at the same time, wanted to secure the money for my ward; and not knowing of any other debts, I thought he could eventually pay me out." In another place he says: "McDowell asked for twelve years time, on additional security that he was to make me. I told him I would give him nine years time; so we agreed on this."

Mrs. McDowell testified that, when her husband asked her to unite in the mortgage to Pritchett (the night before its execution), he stated "that Pritchett would give him nine years to pay it in, and he thought it would enable him to pay up all his other debts. This is the only way he spoke to me of other debts." It is not shown that Pritchett was informed of this.

The present suit grew out of Dawson's guardianship of·D. A. Steele. McDowell was one of Dawson's sureties on his bond as guardian. The settlement of the guardianship was had in Wilcox Probate Court March 13, 1884, and a decree

[McDowell v. Steele.]

was rendered against the guardian for something over twenty eight hundred dollars. Judge Purifoy, then judge of probate of Wilcox, testified, that in the evening of the day on which the settlement was made, Pritchett inquired of him if Dawson had attended the settlement; and on being informed that he had not, he became irritated, and used some harsh expressions. He testified further that he then informed Pritchett of the result of the settlement. Pritchett testified this conversation occurred March 15, 1884.

The mortgage from McDowell and wife to Pritchett was executed and filed for record March 14, 1884. The debt of six thousand dollars was divided into nine equal installments, due December 1, severally and annually, commencing with 1885, and ending with 1893, with a provision that the entire accruing interest was to be paid annually; and if the mortgagor made default in paying the third note at its maturity, December, 1887, then the mortgagee was empowered to foreclose the mortgage by sale.

The testimony is very strong, that Pritchett, at and before he took his mortgage, had knowledge that McDowell owed a debt or debts, other than those he owed to him, Pritchett, and to his mother, Mrs. McDowell. Be this as it may, the testimony and the surroundings clearly convince us that he had sufficient notice to put him on inquiry, which would have led him to a discovery of such debt or debts. Finding this to be the fact, the conclusion is irresistible, that the long delay granted to McDowell, during which the possession and use of the property were proposed to be secured to him, and other creditors denied the right to enforce the collection of their demands, rendered the mortgage doubly fraudulent : First, in securing a valuable benefit to McDowell, and, second, in delaying and hindering all other creditors in the assertion of their claims.

Forbearance and generosity to an embarrassed and struggling debtor, are highly praiseworthy; but the law's stern morality can not permit their exercise, when the palpable effect of thus favoring the debtor is to hinder and obstruct other creditors in the enforcement of their equally meritorious claims. When there is a conflict between the mandate of justice and the instinct of charity, the latter must yield, in all human tribunals.

The chancellor's reasoning and conclusions in this case are striking and convincing. His decree is in every respect affirmed.