McDonald & Co. v. Hoover.

R. L. McDonald & Company, *Appellants*, v. Hoover *et al.*; R. Douglass & Company, *Appellant*, v. Hoover *et al.*; Brown-Desnoyers Shoe Company, *Appellant*, v. Hoover *et al.*; Dillard, *Interpleader*, *In Omnibus*.

### Division Two, February 1, 1898.

1. **Appeals**: ABSTRACT OF EVIDENCE: CERTIFICATES OF CLERK. Under section 2253, Revised Statutes 1889, appellant is permitted to make his own abstract, which contains nothing more than a recital of the substance of the various entries. Such abstract is never authenticated by the clerk's certificate, and is conclusively presumed to be true unless challenged by a counter abstract provided by respondent.

2. **Attachment**: FRAUDULENT TRANSFERS: SCOPE OF STATUTE. If the actors in the transaction impugned for fraud were actuated by a motive to hinder, delay or defraud creditors, it is utterly immaterial how valuable the consideration which passed from the transferee, vendee or purchaser, and the transfer by the attachment debtor is none the less void under the statute.

3. ———: PREFERENCE: LIMITATION. A debtor in Missouri has the right to prefer one creditor over another so long as he acts in good faith. But he can not make an indebtedness to one creditor the means not only of securing him, but of barring other creditors to the surplus after that creditor is paid; nor can he confer upon one creditor the power to discriminate among other creditors in distributing the surplus placed in his hands.

4. ———: FRAUDULENT FACTS: SECRET TRUST: FACTS FOR JURY. When a conveyance appears on its face to be a secret trust for the grantor, the courts will declare it void as a matter of law. And the same facts that will render a conveyance void if expressed on its face, will also render it void if proven *aliunde*. If the facts are in dispute, their truth may be established by a jury, and then the court declares they constitute fraud. The facts of this case are reviewed and the conclusion reached that a conveyance to the interpleader by the defendants was fraudulent as having been made to hinder and delay their creditors.

*Appeal from Vernon Circuit Court.*—Hon. D. P. Stratton, Judge.

Reversed and remanded (*with directions*).

*M. T. January, Seneca N. Taylor* and *Charles Erd* for appellants.

(1) The transaction between Hoover Brothers and Dillard, as shown in this record, discloses actual fraud. (2) The agreement between Hoover Brothers and Dillard, as detailed by the latter, at the time the chattel mortgage was executed, gave Dillard unlimited authority to deal both with the property and the creditors of the firm. It shows an attempt to delegate the power and to prefer creditors, rendering the transaction fraudulent in law. *Seegers Sons v. Thomas,* 107 Mo. 635; *Hamill v. England,* 57 Mo. App. 106. (3) Therefore it was error to overrule the demurrer to the evidence. (4) Where an interpleader claiming property has only a special interest, the jury should find such special interest and the judgment should be responsive to such finding. At the time these attachments were levied the condition of the chattel mortgage held by Dillard was not broken and his interest was limited to the amount secured by his chattel mortgage. *Lewis v. Mason,* 94 Mo. 559.

*G. S. Hoss* for respondent.

(1) There is nothing in the record proper in what is set out as a bill of exceptions to indicate that any bill of exceptions was filed during the term at which the case was tried, or that leave was given to file bill of exceptions in vacation. When the bill is filed in term the record of the court must show that fact. *Williams v. Williams,* 26 Mo. App. 408; *Pope v. Thompson,* 66 Mo. 661; *Fulkerson v. Houts,* 55 Mo. 302; *Baker v. Loring,* 65 Mo. 527; *Johnson v. Hodges,* 65 Mo. 589. (2) As to the point made by appellants in asserting that the jury should have found the value of the interest of Dillard, interpleader, we have to answer, *first,* what if

plaintiffs at the trial claimed that the interpleader had only a special interest in the property involved and was not the general owner it was their duty to have called the court's attention to this fact by proper instruction. The entire record of the proceedings shows that the case was tried on the part of the plaintiffs on the theory that Dillard, interpleader, was entitled to recover all or no part of this property. (3) Even though they had asked an instruction upon this theory, and the court had refused it, it would not have been error on the part of the court. *Mills v. Thompson*, 61 Mo. 415; *Hewson v. Tootle*, 72 Mo. 632; *Nolan v. Deutsch*, 23 Mo. App. 1; *Dilworth v. McKelvey*, 30 Mo. 149; *Hewson v. Tootle*, 72 Mo. 637; *Miles v. Thompson*, 61 Mo. 407; *Rindskoff v. Rodgers*, 34 Mo. App. 126. (4) Complaint is made by appellants that notwithstanding the question of fraud was fairly submitted to the jury in this instruction asked by plaintiffs themselves, and decided by the jury adversely to plaintiffs, that still it was not a matter for the jury to pass upon, but the court should have taken the case from the jury and have rendered judgment for plaintiffs and against the interpleader. We call attention to the fact that this instruction is much stronger and goes further than the evidence warrants in favor of the plaintiffs. *Nelson Distilling Co. v. Hubbard*, 53 Mo. App. 23.

GANTT, P. J.—This appeal was taken from a judgment in favor of the interpleader Dillard in each of the foregoing cases in the Vernon circuit court at the April term, 1895. Said causes had been consolidated and were tried together. After a careful reading of the complete record we are satisfied we can not condense the facts into a more intelligible and accurate statement than that furnished us by Mr. January, the counsel for appellant, and hence we substantially adopt it.

Prior to September 8, 1890, J. W. and R. E. Hoover, brothers, were engaged in the mercantile busi ness at Richards, in Vernon county, under the firm name of "Hoover Bros." At the same time these two brothers with H. C. Moore were conducting a general store at Rinehart in the same county under the firm name of "Hoover Brothers and Company." Both firms being pressed by their creditors and unable to meet their debts maturing, executed to W. W. Dillard, of Ft. Scott, the interpleader in this case, a chattel mortgage covering the following property: "The general stock of merchandise in and about the build-ing known as Hoover Bros.' store at Richards, in Ver-non county, Missouri, consisting of groceries, queens-ware, crockery, dry goods and notions, together with the fixtures and furniture, including also every piece of personal property in and about and connected with the said store, including all accounts, bills and notes due from the customers; also the general stock of merchandise in the building known as Hoover Bros. and Moore's store at Rinehart, Vernon county, Mis-souri, consisting of groceries, queensware, hardware, dry goods, hats and caps, harness and notions, in-cluding the fixtures and furniture, etc., of said store, including also all accounts, bills and notes due from customers, and this description is intended to cover everything of personal property in and about and con-nected with said store, also building and additions thereto in which said property is kept; also fifty acres of growing corn now standing on the farm of Mrs. P. E. Hoover, six miles north of Richards." By which said chattel mortgage it was provided that Dillard should take immediate possession of said property and proceed to sell the same in the most economical and practical way until he had realized enough to pay the note secured by said chattel mortgage, and any prop-

erty remaining after said note was paid should be returned to grantees. The note secured by this chattel mortgage was for $3,338.62, and was dated September 8, 1890, due six months from date, bearing eight per cent interest from date. At the same time a trust deed was executed to Dillard by defendants, conveying certain real estate and stock to secure the payment of the same note. These two mortgages cover all of the property of every kind and character owned by defendant. Dillard immediately took possession of the two stocks of goods at Richards and Rinehart, retaining the old clerks, putting one in charge at each place, and proceeded to retail the goods just as Hoover and Moore had been doing and disposed of goods for which he received the money but could not state the amount. Dillard came to Nevada, the county seat of Vernon county, on the morning of September 9, to record his chattel mortgage and on that morning wrote the following letter to J. W. Hoover:

"NEVADA, Mo., Sept. 9.

"DEAR WILL: Tell Mr. Jackson if the sheriff should attempt to serve the attachment to give him a written protest. Use this form: 'I hereby protest against your interruption of the legal rights of W. W. Dillard, assignee. John Jackson, agent for W. W. Dillard, assignee.'"

Over on the reverse side of the sheet is the following letter:

"Will, be sure to have the deed from your mother to you boys of the Hoover lot (one acre) recorded before Robert sends the mortgage to be recorded. If you find the deed, go at once or send it to Nevada to be recorded; no time to lose on it. Yours truly, W. W. Dillard, Assignee."

As soon as Dillard took possession of the two

stocks of goods aforesaid, he caused a notice to be posted up as follows, at each store.:

"MORTGAGEE'S NOTICE:—This store is now in the possession of the undersigned mortgagee and the goods will be sold by him.   W. W. Dillard, Mortgagee."

On September 9, 1890, the Kelly-Goodfellow Shoe Company, the Alkire Grocer Company, and other creditors, sued out attachments which were levied on all the property conveyed by Hoover Brothers and Moore to Dillard, and on September 12 other creditors, including these plaintiffs, sued out attachments against Hoover Brothers and Moore, the writs being levied on the goods at Richards and Rinehart subject to the prior levies.   Dillard duly filed his interplea in each of said attachment suits.   The case of R. L. McDonald & Company coming on for trial, by consent, the other cases shown in the caption were consolidated and were all tried together.   Dillard claimed under the chattel mortgage aforesaid.   The defense was that said mortgages were fraudulent and void because made to hinder, delay or defraud creditors who were not secured thereby.

The evidence preserved in the bill of exceptions, detailed by interpleader Dillard himself, is substantially as follows:   On September 6, 1890, Dillard received a letter from one of the Hoover boys stating that the firm was in embarrassed circumstances, and asking him to come to Richards. In response to that letter Dillard went to Richards on Sunday, September 8.   Dillard had a claim of about $150 against Hoover Brothers for merchandise sold them, and after arranging his own claim, by taking back his unsold goods and receiving the difference in money, he proceeded to inspect the stock of goods at Richards and also at Rinehart with a view of helping the firm out of its difficulty.   He examined the two stocks of goods and also examined the books

and was informed that the total indebtedness of both stores was about $2,100. The claim of Kelly-Goodfellow Shoe Company and also Burnham, Hanna, Munger & Company, the first amounting to $569.80 and the latter to $652, were not mentioned to Dillard at that time and he knew nothing of these claims until afterward, he says. He then arranged to accompany Hoover Brothers to Fort Scott and the next day, Monday, consulted an attorney. They met at the office of Ware, Biddle & Cory, and after a consultation with Mr. Cory, they were advised, so Dillard says, that the Hoover Brothers *had so much property and were so little in debt that they could not make an assignment for the benefit of creditors.* It was soon discovered that Mr. Cory had in his hands for collection the claims of Kelly-Goodfellow Shoe Company and also the Burnham, Hanna, Munger & Company account. Dillard then arranged with the Ft. Scott creditors to take up their claims, which he did by executing his own note to each one of them payable in six months *without interest*, and also executed his own note for the Kelly-Goodfellow Shoe Company claim and also the claim of Burnham, Hanna, Munger & Company, the whole aggregating the sum of $3,338.62, being the exact amount of the note secured in the chattel mortgage afterward executed. As soon as Dillard had completed this transaction he and the Hoovers returned that day to Richards where the chattel mortgage in controversy was drawn up and executed. The acknowledgment being taken by J. H. Rinehart as justice of the peace at 10 or 11 o'clock Monday night, at which time Rinehart was aroused out of bed to perform the official duty of taking an acknowledgment.

In the course of his testimony, Dillard testified as follows:

"*Q.* You testified in the case of the Alkire Grocery Company against Hoover Brothers, in which you were interpleader, didn't you? *A.* Yes, sir.

"*Q.* I will ask you if you gave this testimony on that trial, in answer to a question by Mr. Gordon: 'And isn't it a further fact that you never intended to include that claim in the mortgage, the claim of Burnham, Hanna, Munger & Co., and the Kelly-Goodfellow Shoe Co., until you went into Mr. Cory's office and he forced the matter upon you?' *A.* Please repeat that.

"*Q.* Is it not a fact that you never intended to include those two claims in your mortgaged indebtedness, those secured by the mortgage, until you went into Mr. Cory's office and he told you that you would have to secure them with others? *A. I will tell you what my intention was, to pay up all the large claims, those that were over one hundred dollars, and those that would not bother me in the settlement, I would pay them as they were presented, they might be all the way from one or two to 25 or 50 dollars, and I wanted to secure the other claims to prevent being interrupted in the management of affairs.*

"*Q. These claims under one hundred dollars that you say you were going to pay off, you were authorized to do that? A. Yes, sir.*

"*Q.* By Hoovers and Moore? *A.* Yes, sir.

"*Q.* All claims under one hundred dollars? *A.* I won't say one hundred dollars. I will say all claims.

"*Q.* All that you found outstanding that you wasn't aware of at the time, you was to pay off and reimburse yourself out of the proceeds of the sale? *A.* Yes, that is what he wanted me to do.

"*Q.* And after you paid them off out of the proceeds of the sales of the goods you were to reimburse yourself? *A.* Yes, sir; the money that I paid for the obligations that I had assumed I was to take from the

property, *and I was to pay all other claims that might come in.*

"*Q*. You were to pay all other claims that might .come in out of the proceeds of those sales? *A.* Yes, sir; *that is what he wanted me to do and what I intended to do.*

"*Q*. I will ask you if you gave that testimony on the trial of that case. *A.* Yes, sir, I did.

"*Q*. Is that testimony true? *A.* I think it is."

And again he testified:

"*Q*. *You didn't expect to pay a claim that wasn't secured in preference to one that was secured? A. I think I would.*

"*Q*. *Under the agreement between you and Hoover and Moore you had authority to do this? A.* I thought I would be safe, and if a man was pressing for his claim and said that he must have money I would pay him. If I could not induce him to hold off until I could get in money out of the goods *I would have to pay him at once or he would give me trouble.*

"*Q*. Why would you have to pay him? *A.* In order to save trouble; he might sue, you know.

"*Q*. You would stand him off? *A.* I would pay him if he said he must have the money."

At the close of the interpleader's evidence plaintiff asked the court to give an instruction in the nature of a demurrer to the evidence as follows: "The court instructs you that under the law and the evidence interpleader can not recover," which was refused and this ruling of the court is assigned as error.

It is shown by the evidence that the debts of Hoover Brothers and Moore amounted to $7,000 or $8,000 and that the appraised value of the stock at Rinehart was $2,862.30, and at Richards $2,045.60. The court gave and refused other instructions. The jury returned a verdict in favor of interpleader. In

due time plaintiffs filed their motion for a new trial, which being overruled, they filed their motion in arrest of judgment, which also being overruled plaintiffs duly appealed.

I.  Preliminary to any discussion of the legal propositions mentioned by the appellants is the point raised by the respondent that we can not consider the bill of exceptions on behalf of appellants, because the statement of appellants in their abstract, that "by an entry of record during the April term, 1895, leave was by the court given to file a bill of exceptions on or before September 1, 1895, which leave was by the judge in vacation extended to November 1, 1895, by his written order duly filed, and entered by the clerk on his vacation minutes on August 22, 1895," "and this leave was further extended to December 1, 1895, by stipulation of counsel in writing on October 29, 1895, and filed in the clerk's office, and that the bill was filed on November 16, 1895," is not authenticated by the clerk.

This appeal was brought here under the provisions of section 2253, Revised Statutes 1889, which in terms permits an appellant to make his own abstract.  Such an abstract is *never authenticated by the clerk*.  It is conclusively presumed to be true unless challenged by a counter abstract as provided by said section.  Nothing more is required in an abstract than a recital of the substance of the various entries.  In this case appellants' abstract recites the leave to file and the several extensions, and the time of granting each, and the length of time and the filing thereof.  This is all that the statute requires.  But if the brief of respondent can be considered as a counter abstract (as he has failed to file any such *eo nomine* as required by the statute), appellants meet this challenge by filing a duly authenticated copy of the several leaves, exten-

sions and filings which confirm their abstract in every particular. In view of the stipulation, extending the time, filed by respondent's counsel in the circuit clerk's office, there is little to commend in the point made against the validity of this bill of exceptions, and it is ruled against interpleader upon the authority of the express language of the statute. R. S. 1889, sec. 2253.

II. If the contention of the plaintiffs in the attachment that their demurrer to the evidence of the interpleader should have been sustained, shall, upon examination, be upheld, the other subordinate question will require no examination, and we will accordingly proceed at once to the determination of that question. The statute against fraudulent conveyances section 5170, Revised Statutes 1889, ordains that "every conveyance or assignment in writing or otherwise, of any estate or interest in lands, or in goods and chattels, or in things in action, or of any rents and profits issuing therefrom, and every charge upon lands, goods or things in action, or upon the rents and profits thereof, and every bond, suit, judgment, decree or execution, *made or contrived with the intent to hinder, delay or defraud* creditors of their actions, damages, forfeitures, debts or demands, or to defraud or deceive those who shall purchase the same lands, tenements or hereditaments or any rent, profit or commodity issuing out of them, shall be henceforth deemed and taken as against said creditors and purchasers, prior and subsequent, to be clearly and utterly void."

This statute has been construed so often that it is not necessary to cite the decisions. It has been ruled that it is not necessary to prove any combination or confederation between the defendant and interpleader to hinder, delay or defraud creditors. It suffices to establish by competent evidence that the actors, in the transaction impugned for fraud, were actuated by a

motive which the statute denounces as fraudulent, to wit, to hinder, delay or defraud creditors, and when this appears it is utterly immaterial how valuable a consideration may have passed from the vendee, transferee or purchaser, it is none the less void in law. *Reed v. Pelletier*, 28 Mo. 173; *Burgert v. Borchert*, 59 Mo. 80.

A debtor has an absolute legal right in Missouri to prefer one of his creditors over another so long as he acts in good faith, but he has no right to make an indebtedness to one creditor the means not merely of securing that creditor but of placing the surplus of his property over and beyond that security in the hands of such creditor in such a way as to put it beyond the reach of other creditors or so as to hinder or delay them in their lawful actions. And while a debtor may prefer his creditors, he has no right to delegate that right to one of his creditors and confer upon such creditor the power to discriminate among the other creditors in the distribution of the surplus placed in his hands. The law will not permit a debtor to thus hold his creditors at bay while his chosen creditor, having fully satisfied himself, compels the other creditors to compromise their claims and await his pleasure. The necessary consequence of such an arrangement is to delay and hinder other creditors as to such surplus, and is clearly such as the statute was designed to prevent and thwart. It is settled law in this State that when it appears upon the face of any conveyance that it is a secret trust for the grantor, the court will declare it void as a matter of law without the intervention of a jury. The law declares, and the security of creditors depends upon the settled principles of law and not the uncertain judgment of jurors as to what constitutes fraud within the meaning of our statute. The decisions of this court go further and hold that the same facts which would ren-

der a conveyance void if expressed on its face, will likewise render it void if found by the court or jury *aliunde* to have constituted a part of the transaction. It is the facts which invalidate the deed. When they appear on the face of the deed or from the grantee's own uncontradicted evidence the courts are authorized to pass upon their legal effect, and declare the instrument void. When the facts are in dispute and must be established by extrinsic evidence, then the court should submit to the jury whether they have been proven, and if so, to find the conveyance void. With these general principles in view, what was the character of the transaction between Hoover Brothers and Dillard, the interpleader? The interpleader had been notified by Hoover Brothers on September 6, 1890, that they were in embarrassed circumstances and his assistance was invoked to help them out of their difficulties. Exactly what they expected in the way of help the record nowhere discloses, though it is stated that J. H. Hoover resided in the town in which the trial was had. What assistance was actually rendered we learn from Mr. Dillard's own evidence. His first act of succor was to take back all the goods he had sold them which remained unsold and required them to pay the difference in cash. He then at once ceased to be a creditor. From that time on he appears solely in the role of a disinterested friend with no selfish consideration whatever to warp his counsel. He then proceeds to examine the stock of goods and accounts at Richards, and having satisfied himself of its value, he went to Rinehart and made a similar investigation of the goods and accounts. He tells us that the two stocks aggregated $10,000, but were appraised at $4,907.90, and the evidence established beyond all question that Hoover Brothers were indebted between $7,000 and $8,000.

Having acquired a full knowledge of the assets of

the firm, he says he was assured by the Hoover Brothers that they only owed about $2,300. His next step was to advise Hoover Brothers to accompany him to Fort Scott in order to take competent legal advice as to how he could further aid them. When they reached Fort Scott they consulted an attorney, and the interpleader says that Hoover Brothers were desirous of making an assignment for the benefit of all their creditors, but when they divulged to the attorney the amount of property they had and the amount of indebtedness, the interpleader says that the attorney advised them that *as they had so much property and owed so little they could not make an assignment for their creditors.* But this same attorney at once disabused the mind of the interpleader as to the amount of indebtedness by notifying him that his firm held two accounts aggregating $1,221.80 which Hoover Brothers had not yet mentioned. The attorney then notified them that these claims must be secured in any arrangement they should make. He advised the interpleader to go around among the Fort Scott creditors and see if he could buy their claims and then have Hoover Brothers execute their notes to interpleader and a chattel mortgage to secure the same. Interpleader thereupon saw the Fort Scott creditors and they agreed to extend their claims six months without interest and take his notes for their debts in lieu of Hoover Brothers. Thereupon their chattel mortgage was drawn up and executed, giving Dillard an *unlimited time* in which to sell the goods at private sale. Dillard, the interpleader, then caused his mortgage to be recorded, and posted up his notices that he was in possession. It is perfectly manifest from Dillard's testimony that at the time of the execution of the mortgage there was another secret agreement between Dillard, the interpleader, and the

mortgagors, that Dillard should have the right to pay off and discharge the debts of unsecured creditors out of funds obtained by sales under his mortgage. He was not limited to the powers conferred by the mortgage, but was acting under a verbal power of attorney also. He was thus enabled to coerce other creditors, or hold them at arm's length. He distinctly says he was authorized by Hoover to pay the unsecured creditors who might be inclined to sue and give him trouble. It is made absolutely clear by the interpleader's own testimony that he had not invested a dollar of his own money in the transaction. He was simply a secret trustee for the Hoovers to manipulate their property for their advantage, or he was a purchaser with full notice of their embarrassed condition, and was aiding them to hinder, delay and postpone their creditors. Hoover Brothers owed him nothing at all when he made this deal with them by which they were to turn over all their property to him, and he assumed certain of their debts. The facts are undisputed. Every fact is established by the testimony of the interpleader himself, and the chattel mortgage. Every dollar's worth of property owned by Hoover Brothers was conveyed to Dillard to secure the note for $3,338.62 which Hoover Brothers had executed to Dillard for assuming exactly that amount of their debts. The property was largely in excess of their debts. The power to compromise and pay unsecured debts was secretly conferred upon Dillard, and he assumed that duty. All the surplus of the property over the amount necessary to secure the note was thus necessarily placed beyond the reach of the unsecured creditors and Dillard and Hoover Brothers left free to compromise or compel settlements. There can be but one consequence of such an agreement and that is to hinder, delay or defraud creditors, and such a contrivance we adjudge

to be fraudulent. *Seger's Sons v. Thomas Bros.*, 107 Mo. 635.

The demurrer to the evidence should have been sustained and the judgment is reversed and cause remanded with directions to the circuit court to render judgment for the plaintiff in attachment on their interplea. SHERWOOD and BURGESS, JJ., concur.