HOPPE HARDWARE Co. v. BAIN, *Sheriff, et al.*

No. 1993, Okla. T.   Opinion Filed May 14, 1908.

(95 Pac. 765.)

1.   FRAUDULENT CONVEYANCES —.Preferences — Knowledge of Grantee—Benefit to Grantor.  A failing or insolvent debtor may prefer one or more of his creditors, but if the arrangement by which he does so stipulates or provides a benefit for him, it is fraudulent on his part, and if the preferred creditors knew of the existence of other debts due by the failing debtor, they are charged with participating in the fraud.

2.   SAME—Evidence—Case.  An insolvent debtor organized a corporation with a capital stock of $7,000, and in payment of indebtedness due by him to his wife and brother-in-law, who knew of the existence of other debts, he had issued to them all the stock of the corporation except one share of the value of $100, and transferred to the corporation by a bill of sale all of his assets of the value of about $11,000 for a consideration of $10,000, and by a collateral agreement the debtor was retained as president and manager of the corporation at a salary of $40 per

month, and the corporation was to pay debts due by him to other creditors in the sum of about $4,000. **Held,** that the transfer by the debtor of his assets to the corporation was fraudulent and void as to a creditor not assenting thereto.

(Syllabus by the Court.)

*Error from District Court, Kay County; before Bayard T. Hainer, Judge.*

Action by the Hoppe Hardware Company against Dan A. Bain and C. O. Baker. Judgment for defendants, and plaintiff brings error. Affirmed.

This is an action in replevin, brought by the plaintiff in error (plaintiff below) against the defendants in error (defendants below) in the district court of Kay county, which resulted in judgment in that court for defendants. The material facts disclosed by the evidence in the case and involved in the consideration of the assignments of error are as follows:

For a number of years prior to January, 1901, Fred H. Hoppe resided at Chillicothe, Mo. In January, 1901, he came to Blackwell, Okla., and purchased from W. R. Stapleton a stock of hardware for a consideration of $7,600, and gave to Stapleton for said property real estate valued at $4,200, $500 in cash, and a note for $1,400. Mr. Hoppe afterwards made payments on the note until the same was reduced to $660. He continued to conduct the hardware business which he had purchased from Stapleton at Blackwell until May, 1902. At that time he was owing various wholesale houses and the First National Bank of Blackwell in the aggregate the sum of about $4,000. He also owed Mary L. Hoppe, his wife, $3,100, and Wm. A. Lockwood, his brother-in-law, $3,600. He owed other indebtedness as surety on notes the exact amount of which the evidence does not disclose, and he owed a balance on his note to Stapleton. His stock of hardware at that time invoiced about $11,000. He was in an insolvent condition, and his creditors were crowding him for payment on their accounts. He went to St. Louis in the month of May, 1902, to try to borrow

money from Lockwood, his brother-in-law, with which to pay off the accounts of those who were urging him for payment. He took with him to St. Louis the invoice of his stock of goods which had been made by him in the preceding February, and a statement of the indebtedness he owed the various wholesale houses and the bank at Blackwell. Lockwood refused to advance him further money, for the reason that Mr. Hoppe was already indebted to him in a large sum which he had been owing him since 1889; but Lockwood proposed to Mr. Hoppe that if he would incorporate his business and give him (Lockwood) stock for what he already owed him, he would loan to the corporation the sum of $3,000, which amount could be applied on the indebtedness Hoppe owed the wholesale houses and the First National Bank of Blackwell, and the remaining $1,000 could be paid out of the proceeds of the sales made by the company. Mr Hoppe went to Chillicothe, Mo., and conferred with his wife about the matter, and finally it was agreed between Lockwood, Hoppe, and his wife that a corporation should be formed whose capital stock should be $7,000; that Lockwood should take $3,800 of this stock, and pay therefor $200 in cash, and surrender to Hoppe the notes he held against him; that Mary L. Hoppe should take $3,100 of the stock, and pay therefor by surrendering to Hoppe the note she held against him, and Mr. Hoppe should retain one share of the stock of the par value of $100; and it was agreed between them there at that time, although this agreement was not made in writing, nor does it appear as a part of the bill of sale hereafter referred to, that Mr. Hoppe should be president and general manager of the corporation, and as such should continue in the management and control of the business and should receive a salary in the sum of $40 per month, and that Mrs. Hoppe should be secretary and treasurer, and should receive as her salary the sum of $10 per month. The corporation was organized. Hoppe executed a bill of sale to it, conveying his stock of goods for a consideration of $10,000. This bill of sale was filed for record in the office of the register of deeds of Kay county shortly thereafter, and Mr. Hoppe notified

his clerks of the change in the business, and also notified the bank at Blackwell and the various wholesale houses to whom he was indebted, but it does not appear that he gave any notice to W. R. Stapleton, or that W. R. Stapleton ever received any notice of the change in the business until some time thereafter. Lockwood sent to the corporation $3,000, and the corporation executed to him its note therefor payable on demand. The debts due by Mr. Hoppe to the various wholesale houses and to the First National Bank of Blackwell were paid off by the corporation. Two small payments were made by Mr. Hoppe to W. R. Stapleton after that time.

Stapleton, after making diligent efforts to collect the balance due on his note from Hoppe, brought suit thereon, and on December 18, 1903, recovered judgment in the total sum of $726.85, and on the 2d day of February, 1904, he had an execution issued thereon and levied upon certain hardware claimed by the plaintiff in error. Plaintiff in error, on the 14th day of February, 1904, filed this action to recover the property from the sheriff who served the writ of execution. The case was tried before a jury, and upon motion of defendants a verdict was directed by the court in their favor, and the assignment of error complaining of this action of the court presents to this court for its consideration the only question in the case.

*W. C. Tetrick,* for plaintiff in error.
*J. W. Peery* and *H. S. Gurley,* for defendants in error.

HAYES, J. (after stating the facts as above). Counsel for both parties to this suit have, we think correctly, admitted in their briefs that this case turns upon the proposition whether the act of Mr. Hoppe in organizing the Hoppe Hardware Company, a corporation, and in transferring to it his stock of merchandise for a consideration of $10,000 recited in the bill of sale, and having 38 shares of the stock of the corporation issued to his brother-in-law, and 31 shares to his wife in payment of indebtedness due by him to them, when by a collateral secret agreement it was provided

that he should be retained as president and manager of the corporation, and should receive a salary of $40 per month, and that $4,000 of his assets transferred by him to the corporation should be used in payment of his debts to certain of his creditors, is in law a fraud against W. R. Stapleton, who was one of his creditors at that time, and who did not assent to the transaction. There can be no question that Mr. Hoppe had the right to prefer his wife and Mr. Lockwood to his other creditors, and if his transaction had consisted only in organizing a corporation and in transferring all of his assets to it, and in having issued certain shares of stock to Mr. Lockwood and Mrs. Hoppe in payment of his debts to them, such act would not have constituted fraud, though it might have had the effect to hinder, delay, or defeat other honest debts owing by him to other creditors. Section 2778, Wilson's Rev. & Ann. St. 1903; *Brittain-Smith & Co. et al. v. Burnham et al.,* 9 Okla. 522, 60 Pac. 241; *Jaffray v. Wolf,* 1 Okla. 312, 33 Pac. 945; *Nix Halsell & Co. et al. v. Underhill et al.,* 8 Okla., 123, 56 Pac. 959.

Plaintiff in error contends that the case should have been submitted to the jury to find whether such transaction was made by Mr. Hoppe with fraudulent intent to hinder and delay his creditors; but it is the well-settled rule that fraud may arise as an inference of law, and that, when a conveyance is made under such circumstances that fraud exists as an inference of law, then it is the duty of the court to pronounce the conveyance in question void as if the fraudulent intent were directly proved. *Lukins v. Aird,* 6 Wall. (U. S.) 78, 18 L. Ed. 750. If the collateral and secret agreement made by Mr. Hoppe with Mr. Lockwood and his wife, which appears neither in the articles of incorporation nor in the bill of sale executed by him to the corporation, to the effect that he should be retained as president and manager of the corporation, and should continue in control and management of the business theretofore conducted by him, and that $4,000 of the assets transferred by him to the corporation should be applied in payment of his debts to certain creditors, constitutes as a matter of law,

fraud against those of his creditors who did not assent to the transaction, then the action of the court in directing a verdict was not error. It is a well-settled rule of the common law that a conveyance to the use of the grantor, or which purports upon its face to be absolute, when there exists a secret agreement creating a trust in favor of the grantor, or by which a benefit is reserved to him, is fraudulent in law and void as to creditors, without regard to the intent with which it was made. *Lukins v. Aird, supra; Robinson v. Elliott,* 22 Wall. (U. S.) 527, 22 L. Ed. 758. This rule of law was in force in the territory of Oklahoma as part of the common law at the time of this transaction. When the people in 1889 came from the different states into Oklahoma, they brought with them the rules of the common law as recognized and promulgated by the American courts. *McKennon v. Winn,* 1 Okla. 327, 33 Pac. 582, 22 L. R. A. 501. And by section 4200, Wilson's Rev. & Ann. St. 1903 of Oklahoma, it is provided that the common law, as modified by constitutional and statutory law, judicial decisions, and the conditions and wants of the people, shall remain in force in aid of the general statutes.

In *Lukins v. Aird, supra,* the facts were that Aird, being indebted and subsequently having failed, conveyed to Spring certain town lots for the sum of $1,200 in money, Spring agreeing at the time that Aird should have the use of two of the lots for one year free, and with the privilege to use them thereafter at $100 per year so long as Spring did not desire to use them. Lukins, one of Aird's creditors, brought the action alleging the transaction was fraudulent, and praying that the conveyance be set aside and the property subjected to his claim. Mr. Justice Davis, who delivered the opinion of the court, said:

"* * * A trust thus secretly created, whether so intended or not, is a fraud on creditors, because it places beyond their reach a valuable right—the right of possession—and gives to the debtor the beneficial enjoyment of what rightfully belongs to his creditors. * * * It makes no difference in the legal aspect of this case that the interest reserved was not of great value. It is enough that it was a substantial interest for the benefit of the grantor, re-

served in a manner which was inconsistent with the provisions of the deed."

The same justice, in *Robinson v. Elliott,* 22 Wall. (U. S.) 523, 22 L. Ed. 758, said:

"But the creditor must take care in making his contract that it does not contain provisions of no advantage to him, but which benefit the debtor, and were designed to do so, and are injurious to other creditors. The law will not sanction a proceeding of this kind. It will not allow the creditor to make use of his debt for any other purpose than his own indemnity. If he goes beyond this, and puts into the contract stipulations which have the effect to shield the property of his debtor, so that creditors are delayed in the collection of their debts, a court of equity will not lend its aid to enforce the contract."

In that case the question before the court was whether a certain stipulation in a chattel mortgage by which it was provided that until default in payment of one of the notes secured thereby the mortgagor might remain in possession of the goods, wares, and merchandise and sell them the same as he had done theretofore, and supply their places with other goods, was fraudulent and vitiated the mortgage. The court held, notwithstanding it was provided by the statute of Indiana where that case arose that the question of fraudulent intent in all cases shall be a question of fact, that the court was the proper party to say whether the mortgage on its face was void.

The same rule is discussed in *Means v. Dowd,* 128 U. S. 273, 9 Sup. Ct. 65, 32 L. Ed. 429, in which case Mr. Justice Miller, speaking for the court, said:

"The prevailing doctrine, however, is unquestionably that which we have stated; and its fundamental essence is that an insolvent debtor making an assignment, even for the benefit of his creditors, cannot reserve to himself any beneficial interest in the property assigned, or interpose any delay, or make provisions which would hinder and delay creditors from their lawful modes of prosecuting their claims."

In *McDowell v. Steele,* 87 Ala. 493, 6 South. 288, the court

held that a failing or insolvent debtor might select one or more of his creditors and pay them in full, even though he thereby disables himself to pay anything to the others; but if the conveyance or arrangement, going beyond the limits of full payment or security, stipulates or provides, openly or secretly, for a benefit to the debtor, it is fraudulent on his part, and if the grantee or secured creditor knows of the existence of other debts left unprovided for, or has knowledge of facts calculated to put him on inquiry as to them, he is charged with participation in the fraud.

This rule was followed by the same court in the case of *Stephens v. Regenstein & Co.*, 89 Ala. 561, 8 South. 68, 18 Am. St. Rep. 156, in which case T. A. Stephens, a failing debtor, sold to B. F. Stephens, his brother, who knew of his failing condition, his stock of goods. B. F. Stephens, the purchaser, knew that the sale was being made by his brother for the purpose of preferring certain of his creditors, one of whom was his mother. It was agreed in the sale that T. A. Stephens, the vendor, should be placed in control and management of the business at a monthly salary of $40. The court held that one of the direct results of the sale was that by the agreement a failing debtor secured for himself a paying employment, which, but for the sale, he could not have had, and that this benefit going to him rendered the transaction fraudulent.

The court held in *Robinson v. McKenna*, 21 R. I. 117, 42 Atl. 510, 79 Am. St. Rep. 793, that where a debtor who owed a merchant for groceries assigned to the merchant his wages due and that might become due for a period of six months in payment of his account, with an agreement that the merchant was to continue to furnish the debtor with groceries and to give him eleven dollars per month to pay his rent, and also from time to time during six months to let him have such other sums as he needed out of his earnings, and apply the remainder to his old and running account, such contract was fraudulent and void. In that case, as in the case at bar, it was insisted that fraudulent intent

is always a question of fact, but the court upon that proposition said:

"While we do not question the general accuracy of this proposition of law, yet it is by no means absolute or without exception; for, while a fraudulent intent in the making of a conveyance is ordinarily a question of fact, yet it is not always so."

In *McDonald & Co. v. Hoover et al.,* 142 Mo. 484, 44 S. W. 334, the court held that a debtor has the legal right to prefer one of his creditors over another so long as he acts in good faith, but he has no right to pay one creditor in such a way that it not only secures that creditor, but places the surplus of his property over and beyond that security in the hands of such creditor to be applied by him in the payment of other debts of the debtor. And in *Ely & Walker Dry Goods Co. v. McLaughlin,* 78 Mo. App. 578, the court used the following language:

"A secret trust for the benefit of the grantor, whether express upon the face of the conveyance creating the trust, or shown by proof *aliunde,* is void as to creditors, and while a debtor has the right to prefer one creditor above another, and thus discriminate in favor of one and against other of his creditors, he cannot delegate this privilege to a third party, and where he makes a conveyance conveying this delegation to his grantee, or where it is proved *aliunde,* the conveyance will be declared void as to creditors."

In the case at bar the transaction by which Mr. Hoppe preferred his brother-in-law and wife resulted, not only in accomplishing such preference by him, but by the agreement secretly made between them it resulted in giving to him a profitable employment, and, if such transaction is valid, also in placing $4,000 worth of his assets in the possession of the newly formed corporation, to be distributed for the benefit of Mr. Hoppe in the payment of certain of his creditors. The effect of the transaction was that Mr. Hoppe applied approximately $7,000 of his assets in making preferred payments to his wife and brother-in-law, and placed the remainder of his assets in the sum of about $4,000 in the possession of the corporation beyond the reach of his other credit-

ors. If the corporation, with or without collusion with Mr. Hoppe, had refused to pay out this $4,000 worth of assets to Mr. Hoppe's creditors, and this contract were valid, the effect would have been to have enabled Mr. Hoppe to have still retained in his control and possession said amount of property beyond the reach of his creditors, thereby hindering and delaying them. At the very time this transaction occurred Mr. Stapleton was urging him to pay the balance on his note, and no doubt Mr. Hoppe thought that by this transaction, as admitted by him in his cross-examination, his property would be protected to a certain extent, but whether he so thought or not is immaterial. The question in this case is not what he may have intended, but what is the result of his deliberate acts? If they resulted in hindering and delaying his creditors, and by secret agreement a beneficial interest in his property was reserved to him, the presumption conclusively arises that such illegal object furnished one of the motives for his making the contract, and it should be held to be fraudulent.

Plaintiff in error has cited *Gardner v. Haines,* 19 S. D. 514, 104 N. W. 244, as being in point. In that case John C. Haines, who had been engaged in business for some time, on the 18th day of October, 1895, organized a corporation to be known as "John C. Haines, Incorporated," the incorporators of which were John C. Haines, May Haines, his wife, and H. C. Loveland, his mother-in-law. The capital stock was $50,000, divided into 500 shares, 445 shares of which were taken and held by John C. Haines. 50 shares were issued to May Haines, his wife, as payment of a debt due by him to her, and 5 shares were issued to H. C. Loveland, his mother-in-law, without any money consideration. Haines conveyed all his assets to the corporation. On the 28th day of January, 1894, prior to the time the corporation was organized, Haines became liable to O. L. Snyder on assignee's bond. Snyder obtained judgment against Haines on the bond in December, 1897. Haines had in 1889 become indebted to John T. Potter for the sum of $12,500. In 1896 Haines gave Potter a new note for said indebtedness, which at that time, including

interest, amounted to $23,000. In 1896, a year after the corpor
ation was organized, Haines borrowed from Marshall Field &
Co. the sum of $25,000 with which he took up the Potter note,
and assigned to Marshall Field- & Co. as collateral his 445 shares
of the capital stock of the corporation. About six months there-
after Marshall Field & Co. received from Haines 440 of said
shares of capital stock in full payment of their note. Haines in
1898 filed his petition in bankruptcy. As was said by the court
in its opinion in that case, it appears that the corporation was
organized and the property conveyed to it by Haines two years
or more before the judgment of Snyder was obtained against him,
and that the petition in bankruptcy was filed three years after
the organization of the corporation. It does not appear that in
the formation of the corporation there was any agreement be-
tween Haines and the other stockholders that he should be re-
tained at a salary of $100 per month, nor was there any agree-
ment by which a portion of the assets were to be taken by the
corporation and paid out by the debtor to his creditors. Having
issued to his wife 50 shares of the capital stock, he thereby pre-
ferred her as one of his creditors, and in delivering to Marshall
Field & Co. 440 shares of the stock he preferred that company.
This he had a right to do; but in making these preferences noth-
ing appears in the record to the effect that any beneficial interest
was retained by secret agreement either in the stock thus trans-
ferred or relative to the management of the business. The court
in its opinion sets forth the seven different contentions made by
counsel for the creditor who was assailing the good faith of the
transaction, but no contention is made that in any of these trans-
actions there was any secret or public agreement by which Haines
retained a beneficial interest in the property transferred, and that
case cannot control in the case at bar.

The same is true of *McNerny v. Hubbard,* 3 Neb. (Unof.)
108, 93 N. W. 1123, also relied upon by plaintiff in error. The
attack in that case was not upon the good faith of the debtors in
the organization of the corporation, but that shares of the stock

had been issued to a creditor to pay off an indebtedness and release a mortgage that plaintiff alleged was based upon a fraudulent claim. It was not contended that the conveyance by the debtors who organized the corporation was for their own use, or that they had retained by secret agreement an interest in the property assigned by them which it was alleged they had endeavored to place beyond the reach of their creditors.

We have not overlooked the other authorities cited by counsel for plaintiff in error in his able and exhaustive brief, but, after an examination of the same, we are of the opinion that the rule of law that a debtor who prefers certain of his creditors cannot in doing so retain a beneficial interest by the transaction by a secret agreement is applicable to the case at bar, and is supported by the overwhelming weight of authorities of the American courts, and is in consonance with the utterances of the Supreme Court of the territory of Oklahoma in *Little Co. v. Burnham,* 5 Okla. 283, 49 Pac. 66, in which the court said:

"The intention of the parties may have been absolutely fair and honest. The mortgagee may have believed that his mortgagor would appropriate the proceeds to the payment of the mortgage debt. The mortgagor may have honestly intended to do so. But the mortgage was void as a matter of law. The conclusion here arrived at is not based upon what the parties may have intended to do, but is based upon what the mortgage does, in fact, concede to the mortgagor the privilege to do. * * * The decisions of the courts of this country have condemned them with almost entire unanimity, and the instrument itself has been as uniformly held to be fraudulent and void as a matter of law, irrespective of the question as to whether any fraudulent intent did in fact exist."

And in *Bank of Perry v. Cooke et al.,* 3 Okla. 534, 41 Pac. 628, the court said:

"It does not matter whether such agreement is oral or in writing, contained within the mortgage or without, if such an agreement was had, the mortgage is fraudulent and void as to creditors."

Mr. Hoppe may have intended no wrong by his transactions, but the effect of his transactions, accompanied with the agreement

that he should be retained as president and manager at a salary of $40 per month, and that $4,000 of his assets transferred by him to the corporation should be applied in payment of his debts to certain creditors, reserved to him a beneficial interest, and these conditions were not made a part of the articles of incorporation, nor a part of the bill of sale executed by him and placed upon record. Mrs. Hoppe had actual notice of the debt of Mr. Stapleton, and while there is no evidence that Lockwood had notice of Stapleton's debt, he does admit that he knew of all the indebtedness of Mr. Hoppe to the wholesale houses and the bank, and that he was surety on notes to other persons whose names he did not know, which was sufficient notice to him that Mr. Hoppe had other creditors than himself and Mrs. Hoppe; and it is therefore our opinion that the transfer by Mr. Hoppe of his property to the Hoppe Hardware Company was fraudulent and void, and that the judgment of the lower court should be affirmed, and it is so ordered.

All the Justices concur.