## TURK et al. v. KRAMER et al.

No. 18937. Opinion Filed Feb. 12, 1929.

Rehearing Denied Sept. 10, 1929.

G. C. Spillers and Turk & Cohen, for plaintiffs in error.

Chas. L. Yancey, Henry L. Fist, Wm. J. Melton, and Donald L. Brown, for defendant in error V. P. Wilson, intervener.

DIFFENDAFFER, C. Plaintiffs in error, who were plaintiffs below, will be herein designated as plaintiffs. George J. Kramer and wife, two of the defendants in error, who were defendants below, will be designated as defendants, and V. P. Wilson, receiver, who in his individual capacity was a defendant below, and as receiver was intervener, will be designated as intervener.

. On or about January 19. 1926, plaintiffs, who were then the owners of a stock of merchandise and fixtures located in Sapul-

pa, Okla., sold the stock and fixtures to defendant Geo. J. Kramer. The purchase price was not paid in cash. Kramer gave a note to plaintiffs payable in installments, $100 per week for three weeks and $200 per week thereafter until the whole note was paid, the last installment being for $143.05. At the same time he gave plaintiffs a chattel mortgage on the stock and fixtures, books of account and accounts contained therein, bills receivable and choses in action acquired by the mortgagee in the conduct of the business, together with all additions and accretions to said stock. fixtures, accounts and choses in action, to secure said note. The chattel mortgage contained the usual conditions and stipulations, and, in addition thereto, the following:

"It is expressly understood and agreed that said mortgagor shall retain possession of said mortgaged property above described as agent of the mortgagee and at the will of the said mortgagee and have the right to sell the same at retail in the legal course of business. While the said mortgagee (mortgagor) remains in possession of said mortgaged property, he shall keep a detailed account of all goods sold by him, and shall at the end of each week beginning Monday, January 25, 1926, render to the mortgagee a statement showing the amount of cash received. and the amount of goods sold, and shall deliver to the mortgagee the net proceeds of all goods sold. The mortgagor hereby acknowledges its agency to the mortgagee. and agrees that in holding possession of said goods, wares, merchandise, furniture, fixtures, accounts receivable, and bills receivable, it is acting only as agent of the mortgagees for the payment of a debt hereinbefore referred to. and it firmly binds itself to account for the proceeds of all sales as above provided.

"The mortgagor is to be allowed all moneys received in the actual conduct of the business above the sums hereinafter specified. and which are provided for in the note hereinbefore mentioned as payments on the said indebtedness for the actual, necessary expense of conducting said businness, which sum shall likewise be in full payment for services rendered as acting agent of the mortgagee in the management of the said stock of merchandise and conducting said business."

"It is understood and agreed by the parties hereto that said mortgagors shall retain possession of said mortgaged property and have the right to sell the same at retail in the regular course of business, provided that said mortgagors shall not permit the aggregate value of said stocks of goods to become materially depreciated or reduced, but that said mortgagors shall keep the same up to its present standard in quantity, quality and value."

The sums specified in the mortgage were the total amount of the note, $6,843.05, and the particular installments as specified in the note, viz., $100 payable January 25, $100 payable February 1, and $100 payable February 8, and $200 payable on each and every Monday thereafter until the entire indebtedness was paid. This mortgage was filed for record in the office of the county clerk of Creek county, Okla., on January 22, 1926. Kramer went into possession of the stock of merchandise and together with his wife conducted the business in the name of Kramer Mercantile Company. Payments were made until the amount of the note was reduced to about $3,000, when, upon default being made, plaintiff demanded possession of the stock and fixtures. At the time the note and mortgage were executed Kramer had no other creditors, but it appears that he did incur other indebtedness in keeping up the stock. When plaintiff demanded possession, defendants refused to deliver same, and made an assignment for the benefit of creditors, wherein V. P. Wilson was appointed assignee. Thereafter Wilson qualified as such assignee and took possession of the property covered by the chattel mortgage, whereupon plaintiffs commenced the present action in replevin, wherein Kramer and wife and V. P. Wilson were made defendants. Writ of replevin was issued to the sheriff, who served same and took possession of the property. Kramer and wife thereupon immediately filed a voluntary petition in bankruptcy, were adjudged bankrupts, and V. P. Wilson was appointed receiver in bankruptcy by the United States District Court. Wilson was appointed as such receiver before the expiration of the 24 hours which the sheriff was required under the law to hold the property to allow a redelivery bond. Wilson, as such receiver, demanded possession of the property from the sheriff. The return of the sheriff shows that he received the writ on December 20, 1926, at 11 o'clock, and served same at 11:15 a. m. of the same day; that he took and held the exclusive possession of the property until 10:15 a. m., December 21, 1926, at which time he was served with an order by O. I. Ryder, referee in bankruptcy, requiring and directing the delivery of all of said property to the receiver named in the order. whereupon, under protest of himself and plaintiffs, no redelivery bond having been offered by defendants, within the 24 hours succeeding the levy, he delivered said property to said receiver.

Plaintiffs then intervened in the bankruptcy court and asked possession of the property under the chattel mortgage. The

matter was heard before the referee, who found and held that the district court of Creek county acquired jurisdiction of the property before bankruptcy proceedings were begun, and remanded the cause to the state court for determination, with directions to the receiver to restore possession of the property to the sheriff. This order was obeyed and the receiver returned the property to the sheriff, who, in turn, in default of a redelivery bond by defendant, delivered same to plaintiffs. Thereupon V. P. Wilson as such receiver filed an intervening petition, wherein he set out the proceedings and substantially, as hereinbefore stated, pleaded the assignment for benefit of creditors; his appointment and qualification as such, his possession as such assignee, before the replevin action was begun; the adjudication in bankruptcy; his appointment and qualifications as receiver in bankruptcy; that he had been ordered and directed by the United States District Court to appear and set up his claim to the property; and specifically attacked the validity of plaintiffs' chattel mortgage as against him as such receiver, and alleged that by virtue of the acts of Congress relating to bankruptcy, he was entitled to and claimed the immediate possession of the mortgaged property.

Defendants Kramer filed an answer alleging substantially the same facts as were contained in the petition of intervener. Plaintiffs answered the petition of intervener by admitting the bankruptcy proceedings, and specifically denying that intervener had any right, title or interest in or concerning the property in controversy.

Trial was had to the court, without a jury, resulting in a judgment for plaintiff for possession of the fixtures and for intervener for the possession of the stock of goods, wares, and merchandise, or their value in lieu thereof. No value, however, was found or fixed by the court. From this judgment against them, plaintiffs appeal.

The first proposition presented is, that the receiver in bankruptcy has no lien upon the property, and no right which the mortgagors did not have, and could make no defense to the chattel mortgage that the mortgagors could not make, and if the mortgage is good as between the parties, it is good against the receiver. A number of authorities are cited to sustain the proposition that the mortgage in question is valid as between the parties thereto. This proposition is conceded by the intervener. It was so found and held by the trial court, and the intervener concedes this finding and holding to be correct.

It is next asserted that the receiver in bankruptcy could make no defense to the mortgage that the mortgagors themselves could not make. Numerous decisions are cited holding, in effect, that a receiver's title to the property of a debtor is the same as the title of the debtor himself at the moment when it goes into his hands. This may be said to be the rule with reference to receivers in general, as held in Flynn et al. v. Lowrance et al., 110 Okla. 150, 236 Pac. 594. It was therein held:

"A receiver holds the property coming into his hands by the same right and title as the person for whose property he is receiver, subject to liens, priorities, and equities, existing at the time of his appointment."

We think, however, as will be presently shown, that this rule has an exception as applied to a receiver in bankruptcy.

Plaintiff next asserts that only creditors having prior liens have a right to question the validity of the mortgage in question. The position of plaintiff is that the mortgage in question should be placed upon the same plane as an unrecorded chattel mortgage, which is valid between the parties and void as to subsequent incumbrancers or purchasers, only for failure to record. In support of this proposition, plaintiff cites In re Terrell, 246 Fed. 743, wherein the court in the body of the opinion says:

"But if the mortgagee takes possession of the property or files his mortgage for record before any other right to or lien upon the property attaches, the title under the mortgage is good against everybody, though not recorded, if it was previously valid between the parties. The ultimate conclusion of the court is that a chattel mortgage in Oklahoma, though not recorded or possession of the property not taken by the mortgagee when made, yet if possession is taken by him, or the mortgage is filed for record prior to the attaching of liens of other parties, the filing of the mortgage for record has the effect of taking possession, and the rights of the mortgagee will be protected from the date of the filing of the same for record. This, it will be observed, is the rule as to chattel mortgages in Oklahoma."

Plaintiff also cites In re Wall, 207 Fed. 994, where it was held:

"In Comp. Laws Okla. 1909, sec. 7911, which makes unrecorded conditional sale contracts void 'as against innocent purchasers, or the creditors of the vendee', the word 'creditors' is limited in meaning to such creditors as have acquired a specific lien upon the property; and the mere intervention of bankruptcy proceedings against the purchaser does not change the status of the property, but the trustee takes no greater

38

right therein than the bankrupt had as against the seller."

It will be noted, however, and plaintiff concedes, that the opinion in Re Wall, supra, has reference to transactions in 1909, before the amendment of the Bankruptcy Act of June 25, 1910, which provides:

"Claims which for want of record or for other reasons would not have been valid liens as against the claims of the creditors of the bankrupt shall not be liens against his estate."

Sample v. Getman-McDonnell-Summers Drug Co. et al., 14 Fed. (2nd Ser.) 170, is also cited and relied upon. There the court was dealing with an unrecorded mortgage, admitted to be valid, except for failure to record. It was there held:

"Under Comp. St. Okla. 1921, sec. 7650, an unrecorded chattel mortgage is valid between the parties and as to creditors of mortgagor who have not acquired liens on the property, and the effect of taking possession, by the mortgagee, with mortgagor's consent, is the same as though a new mortgage was executed and recorded on that date."

But in the body of the opinion, the court said:

"A different question would have been presented had the issue been one where the mortgagee permitted the mortgagor of a stock in trade to remain in possession and to make sales therefrom in the ordinary course of business, applying the proceeds to his own use and to obtain credit from creditors in carrying on the business apparently as if he owned it without notice of any incumbrance. See 11 C. J. sec. 269, p. 573, and authorities therein cited. But no such issue has been presented on this hearing."

In 11 C. J. par. 269, p. 573, the rule referred to is as follows:

"Under the more generally accepted rule, when the mortgagor of a stock in trade is permitted by the mortgagee to remain in possession and to make sales therefrom in the ordinary course of business, applying the proceeds to his own use, if he see fit, the transaction is fraudulent and void as to creditors. This is true whether the permission is express or implied, oral or written, or whether it appears from the face of the mortgage, or is the result of a collateral agreement. However, where the permission does not appear on the face of the mortgage, the instrument cannot be declared fraudulent per se, but the existence of the agreement to retain possession, and to sell, applying the proceeds to the mortgagor's use, must be established as a question of fact. Under these authorities such an arrangement, when established, is fraudulent without regard to the actual intent of the parties to defraud."

The text is supported by numerous authorities, including Little Company v. Burnham, Hanna, Munger & Co., 5 Okla. 283, 49 Pac. 66. The third paragraph of the syllabus in the latter case is cited by plaintiff as applicable here. It was there held:

"But such a mortgage is good between the parties to it, and when the mortgagee has obtained possession of the mortgaged stock by the consent of and agreement with the mortgagor and has proceeded to exercise his rights over the property as provided by the mortgage to secure the payment of his debt, such mortgage is completely good as against creditors asserting their rights under liens acquired subsequent to such possession."

This seems to be the universal rule, but is not applicable here for the reason that plaintiffs never obtained possession of the mortgaged stock by consent of or agreement with the mortgagor. Counsel for plaintiff apparently overlooked paragraph 2 of the syllabus of the same case, wherein it was held:

"The right having been reserved to the maker of a chattel mortgage of a stock of goods, wares and merchandise, to sell, 'in the usual course of business and apply the proceeds of such sale to pay the actual and necessary expenses of carrying on the business, and replace enough goods to keep the stock up to its present value.' The mortgage also provided that it was to 'cover all goods, wares and merchandise thereafter bought for said store.' The power is thus reserved to the mortgagor to appropriate the surplus. Such an instrument is itself fraudulent and void as to creditors, as a matter of law, irrespective of the question as to whether or not any fraud or fraudulent intent did, in fact, exist."

The mortgage there under consideration was similar to the one here, and was filed of record, so that recording the mortgage was not what made it valid as against other creditors, but taking possession of the mortgaged property with consent of the mortgagors was held to render the mortgage valid.

The above case has been the law since before statehood, and has never been modified or criticised. So that the filing of such mortgage is clearly not equivalent to taking possession of the property with the consent of the mortgagor. In re Kramer Merc. Co., In re Kramer, 21 Fed. (2nd Ser.) 615, is what plaintiffs in their original brief term a "companion case to the instant case," and was relied upon as controlling. It was there held:

"Filing of chattel mortgage in compliance with recording statute of state imports notice to third persons of its contents."

"A provision of a chattel mortgage, permitting the mortgagor to retain possession and sell in the ordinary course of trade, and to apply the proceeds to his own use, does not in itself raise a presumption of fraud, but is only to be considered in connection with other attendant facts and circumstances in determining whether there is fraud in fact."

The facts in that case were similar to the the one in question. But our attention is now called to W. H. Clark, Receiver, v. H. C. Huckaby, No. 7995, 28 Fed. (2d) 154, U. S. Circuit Court of Appeals, Eighth Circuit, decided at the May term, 1928, which is In re Kramer, supra, upon appeal. In that case, the decisions of this court on the question of the fraudulent character of the mortgage are reviewed, and the rule announced in Little Co. v. Burnham, Hanna, Munger & Co., supra, is followed. Bank of Perry v. Cooke et al., 3 Okla. 534, 41 Pac. 628; Ranney Alton Mer. Co. v. Watson, 10 Okla. 675, 65 Pac. 98; Godfrey et al. v. Hutchinson Wholesale Gro. Co., 12 Okla. 456, 71 Pac. 627, are cited in support of the rule.

The court in Clark v. Huckaby, supra, held that the issue must be determined by the application of the law of the state where the property was located, the mortgage executed and recorded, as was held in Etheridge v. Sperry et al., 139 U. S. 266, 55 L. Ed. 171. So that authorities cited from other jurisdictions holding to what plaintiff terms the more modern doctrine in regard to such transactions, cannot be applied. All questions raised by plaintiffs here seem to have been involved in that case, and were decided adversely to plaintiffs.

The claim is made that though the mortgage may be invalid as to other creditors, this means only such creditors as had obtained valid liens by contract, attachment or judgment. This question was also in the Huckaby Case, supra, and the court said:

"When the bankruptcy proceeding was filed, in effect, a levy was made upon the bankrupt's property by their creditors. The appellee then appeared and asserted his right to the entire assets, basing it upon the existence of the chattel mortgage. Section 67a., U. S. C. A. Title 11, sec. 107a of the Bankruptcy Act, provides:

" 'Claims which for want of record or for other reasons would not have been valid liens as against the claims of the creditors of the bankrupt shall not be liens against the estate.'

"This section is applicable to the situation that confronts us in this case, the mortgage being invalid as to creditors of the mortgagors, it is invalid as to creditors of the bankrupt estate. Dodge v. Norlin (C. C. A.) 133 Fed. 363, 13 Am. B. R. 176; In re Nat. Bank of Canton, 135 Fed. 62, 14 Am. B. R. 180.

"The receiver in this case was appointed subsequent to the adjudication. He, therefore, became more than a mere custodian of the property in the course of administration. The trustee subsequently to be selected will be vested with the title to the bankrupts' property, by relation, as of the time of the filing of the petition and the adjudication. A trustee should have, but has not, been named. It is the statutory duty of the receiver to preserve the property until the selection of the trustee so that it will be available for the proper administration of the estate. It certainly cannot be that because there has been no trustee selected that liens such as the one here presented must be sustained, whereas, if the trustee were in charge of the estate, he would have a perfect defense. The effect of such a holding in this case would be that the entire estate would be diverted from those justly entitled to it. We do not think such a contention as that made by the appellee here has ever been sustained."

This opinion is vigorously assailed by plaintiff in a supplemental reply brief, but our attention is called to the fact that an application for a writ of certiorari was made to the Supreme Court of the United States, and the writ has been denied, and Clark v. Huckaby, supra, has become final. We think then that the settled rule in this state is that such mortgages as the one in question, though valid as between the parties thereto, is ineffective to confer any rights upon the mortgagee as against a receiver or trustee in bankruptcy, though filed of record, before any proceedings in bankruptcy are commenced, unless the mortgagee, with the consent of the mortgagor, takes actual possession of the mortgaged property before any such proceedings are commenced, and this regardless of the bona fides or good intention of the parties. It appearing that plaintiffs did not obtain possession of the stock of goods, wares and merchandise, with the consent of the mortgagor prior to the adjudication in bankruptcy and appointment of the receiver, it follows that the rights of the receiver are superior to those of plaintiffs as to the stock of goods, wares and merchandise.

The judgment should be affirmed.

BENNETT, LEACH, TEEHEE, and HERR, Commissioners, concur.

By the Court: It is so ordered.