## MIDWEST PRODUCTION CO. v. DOERNER.

### No. 981.

Circuit Court of Appeals, Tenth Circuit.
March 24, 1934.

Christy Russell, of Tulsa, Okl. (C. M. Oakes, of Tulsa, Okl., on the brief), for appellant.

Irvine E. Ungerman, of Tulsa, Okl. (Lawrence Mills, R. M. Cohen, and Wm. M. Taylor, all of Tulsa, Okl., on the brief), for appellee.

Before PHILLIPS and McDERMOTT, Circuit Judges, and KENNEDY, District Judge.

PHILLIPS, Circuit Judge.

This is an appeal from an order of the district court affirming an order of the referee holding a chattel mortgage, a contract, and an assignment of accounts receivable from the Tulsa Steel Company, bankrupt, to the Midwest Production Company void as against creditors and the trustee in bankruptcy, and allowing the claim of the Production Company as a general claim.

On September 6, 1932, the bankrupt executed and delivered to the Lilac Oil Company its promissory note for $15,000 due December 6, 1932. On September 6, 1932, the bankrupt executed and delivered to the Oil Company, as security therefor, its chattel mortgage upon the following described property:

"All stock in trade of the mortgagor, located at, in, or about the steel mill of said mortgagor, at Sand Springs, Tulsa County, Oklahoma, including:

"All finished bars, rods, angle-irons, and ingots, and all other finished products; all scrap-iron, and all of mortgagor's right, title, and interest in steel rails, whether heretofore or hereafter delivered at said mill; all after-acquired property of like nature and character as above set forth."

The chattel mortgage contained the following provision:

"4th. No part of said mortgaged property shall be sold or disposed of in any way by said mortgagor without the written consent of said mortgagee, except in the usual course of trade."

It was duly filed September 12, 1932, in the office of the county clerk of Tulsa County, Oklahoma.

On September 6, 1932, the bankrupt and the Oil Company entered into a contract which recited the making of such note and chattel mortgage, and in part provided:

"1. Notwithstanding the terms of said chattel mortgage, first party shall have the right to sell its finished products in the open market, in the usual course of trade, prior to the maturity of said note; and it agrees to maintain its supply of finished products, known as 'bars' and 'ingots,' at not less than 400 tons of both such bars and ingots, until payment of said note.

"2. Notwithstanding the fact that said note is made to mature in 90 days from the date hereof, first party hereby agrees to pay to third party, to apply upon said note, one-fourth of the proceeds of all invoices of products sold, under orders heretofore shipped (and not yet paid for), as well as upon all future orders; settlement and payment to be so made on the 1st day of October, 1932, and on the first day of each month thereafter until said note shall have been fully paid."

This collateral agreement was not recorded.

On September 7, 1933, within four months prior to the adjudication in bankruptcy, the bankrupt assigned the accounts receivable of 31 of its creditors to the Oil Company.

The Production Company, as assignee of the Oil Company, filed a secured claim predicated on such note, chattel mortgage, contract, and assignment.

The bankrupt was engaged in the operation of a steel mill at Sand Springs, Oklahoma. It reclaimed scrap iron by re-melting and re-rolling it. It was chiefly engaged in the manufacture of steel rods for re-enforcing concrete. Its products were not manufactured to fill orders as they were received, but it carried on hand a stock of its products for sale to the general public, and maintained a sales department therefor.

■ The validity of such chattel mortgage, contract, and assignment is to be determined by the law of Oklahoma. Clark v. Huckaby (C. C. A. 8) 28 F.(2d) 154, 157, 67 A. L. R. 1456; Etheridge v. Sperry, 139 U. S. 266, 276, 277, 11 S. Ct. 565, 35 L. Ed. 171.

Prior to the adoption of section 11291, O. S. 1931, there can be no doubt but that, under the law of Oklahoma, such a mortgage would have been invalid as to creditors. Turk v. Kramer, 138 Okl. 35, 280 P. 266, 269, 73 A. L. R. 229; Clark v. Huckaby, supra.

In Turk v. Kramer, supra, the court said:

"Under the more generally accepted rule, when the mortgagor of a stock in trade is permitted by the mortgagee to remain in possession and to make sales therefrom in the ordinary course of business, applying the proceeds to his own use, if he see fit, the transaction is fraudulent and void as to creditors. * * * Such an instrument is itself fraudulent and void as to creditors, as a matter of law, irrespective of the question as to whether or not any fraud or fraudulent intent did, in fact, exist."

Section 11291, O. S. 1931, reads as follows:

"Every mortgagor of personal property in this state, who with the consent of the mortgagee, or his assignee, shall sell such

mortgaged property, or any part thereof, while the mortgage remains in force and unsatisfied, shall be deemed and conclusively held to be the trustee of the funds received upon the sale thereof, for the benefit of such mortgagee, or assignee, to the extent of the indebtedness secured thereby or any balance due thereof."

Section 11292, O. S. 1931, provides a penalty for the violation of section 11291 by a mortgagor. These sections were adopted in 1927 (chapter 4, Okl. Sess. Laws 1927).

In the case of Farmers State Bank of Alva v. Kavanaugh & Shea, 98 Okl. 119, 224 P. 525, decided March 18, 1924, the court held that a chattel mortgagee, who had consented to the sale of the mortgaged property by the mortgagor on condition that the proceeds should be paid over by the mortgagor for application on the mortgage indebtedness, lost his lien on the property when it was sold pursuant to such agreement, and that the lien of the mortgage did not attach to the proceeds of such sale in the hands of the mortgagor so as to defeat the lien of a general creditor acquired by impounding such proceeds by garnishment before they were paid over to the mortgagee.

Section 2215, C. O. S. 1921 [O. S. 1931, § 1946], provides that "any mortgagor of personal property, * * * who, while such mortgage remains in force and unsatisfied, * * * sells * * * such property, or any part thereof, * * * without the written consent of the holder of such mortgage, shall be deemed guilty of a felony."

In Mays v. State, 38 Okl. Cr. 185, 242 P. 580, decided January 16, 1926, the court held that a conviction could not be sustained under section 2215, supra, where the mortgagor sold the mortgaged property with the tacit, but without the written consent of the mortgagor.

The raising of beef cattle is an important industry in Oklahoma. It is a common practice for a mortgagor of cattle to sell the mortgaged cattle with the tacit consent of the mortgagee and remit to the mortgagee the proceeds of the sale up to the amount of the mortgage indebtedness. It is desirable that the marketing of the cattle be left to the mortgagor. After the two decisions last adverted to, this practice could no longer be followed with safety to the interests of the mortgagee.

■ We are of the opinion that sections 11291 and 11292 were enacted to modify the effect of those decisions, and that they were not intended to apply to sales made by a mortgagor where the mortgagee consents that the mortgagor may make the sale and apply the proceeds to his own use, as in the instant case.

■ If we assume that section 11291 became a part of the mortgage upon its execution, nevertheless the contract by its express terms modified the mortgage and provided that, "notwithstanding the terms of said chattel mortgage," the mortgagor might sell its finished products in the open market in the usual course of trade and apply one-fourth of the proceeds of such sales on the note and use the remaining three-fourths for its own purposes. While the contract does not provide expressly that the remaining three-fourths of the proceeds of such sales may be used by the mortgagor for its own purposes, such is the clear implication. It contemplated that the mortgagor should continue its business, and required the mortgagor to keep its supply of finished products up to 400 tons. The mortgagor's financial condition, as disclosed by the record, was such that it could not have carried on its business or maintained its stock without using a portion of the proceeds of such sales.

It therefore follows that the mortgage and contract, which were entered into contemporaneously and as parts of one transaction, when construed together, permitted the mortgagor to sell the mortgaged property and apply a portion of the proceeds to its own use.

■ The contract was not recorded. It was a secret agreement. The mortgage standing alone with section 11291, supra, read into it, might not have been objectionable, but that we need not decide. The contract modified the mortgage and added the vice which would have inhered in the mortgage, absent therefrom the provisions of section 11291, supra.

We are of the opinion that such secret agreement modifying the terms of the mortgage rendered the whole transaction fraudulent and void as against the creditors of the mortgagor, and the trustee in bankruptcy.

Furthermore, section 7650, C. O. S. 1921 (O. S. 1931, § 11277), provides that "a mortgage of personal property is void as against creditors of the mortgagor * * * unless the original, or an authenticated copy thereof, be filed by depositing the same in the office of the register of deeds of the county where the property mortgaged, or any part thereof, is at such time situated."

The contract was entered into contem-

poraneously with the mortgage; it purported to add to the terms of the mortgage; it was a part and parcel of the mortgage and materially affected the rights of the creditors. This is especially true if section 11291 is to be read into the mortgage proper. It follows, we think, that the failure to file the contract along with the mortgage rendered the filing of the mortgage ineffectual and void as to the trustee in bankruptcy.

It is conceded that the validity of the assignment of the accounts receivable depends upon the validity of the mortgage, and, if the mortgage was void as against the trustee, the assignment was likewise invalid as against the trustee.

The judgment is affirmed.